**Deborah C. HOWARD,**
**Plaintiff–Appellant,**

v.

**GLEASON CORPORATION and**
**Alliance Tool Corporation,**
**Defendants–Appellees.**

**No. 783, Docket 89–7842.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1990.

Decided April 13, 1990.

Donald W. O'Brien, Jr., Woods, Oviatt, Gilman, Sturman & Clarke, Rochester, N.Y., for plaintiff-appellant.

Eugene D. Ulterino, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., for defendants-appellees.

Before KEARSE, MINER and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff Deborah C. Howard appeals from a judgment entered in the United States District Court for the Western District of New York (Telesca, J.) denying her motion to remand the action to state court and granting summary judgment in favor of the defendants, Gleason Corporation and Alliance Tool Corporation. 716 F.Supp.

740. The district court concluded that New York Insurance Law § 4216(d) is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (1982 & Supp.V 1987) ("ERISA"), and that the defendants had complied with their obligations under the relevant ERISA provisions. Because we agree with the district court in both respects, we affirm.

## BACKGROUND

Daniel Howard was employed by the tool division of Alliance Tool Corporation ("Alliance"), a wholly owned subsidiary of Gleason Corporation ("Gleason"). Gleason provided group life insurance benefits to both its employees and the employees of its subsidiaries pursuant to an agreement with the Prudential Insurance Company of America. Under the contract with Prudential, Alliance maintained a Group Life and Long Term Disability Insurance Plan (the "Plan"). In November, 1984, Alliance distributed a summary of the Plan to all its employees describing the various life insurance options that would become available in January, 1985. Daniel Howard enrolled in the Plan and obtained two life insurance policies with plaintiff Deborah Howard, his wife, the named beneficiary.

Under the Plan, employees whose employment with Alliance terminated had the option of converting their group life insurance policies to individual policies within thirty-one days after termination. This conversion option was described in the November, 1984 initial summary plan description, in a further summary plan description distributed to all employees in September, 1985 and in a booklet describing employment benefits distributed to all employees of Alliance in March, 1986.

On December 16, 1986, Alliance sold its tool division to J.S. Tool and Die Co. As a result of the sale, Mr. Howard's employment with Alliance terminated, although he continued to work in the same capacity at the same location, at first for a temporary agency and later as an employee of J.S. Tool and Die Co. Mr. Howard took no steps to exercise his insurance conversion option.

Upon Mr. Howard's death on July 11, 1987, Deborah Howard submitted claims under both of her husband's policies. Prudential denied both claims on the ground that Mr. Howard's life insurance coverage under the Alliance Plan had lapsed when the tool division was sold and he failed to continue coverage by converting the group policies to individual policies. Mrs. Howard then sued in state court alleging that Gleason and Alliance had failed to comply with New York Insurance Law § 4216(d) which required them to inform her husband of his conversion privilege within fifteen days of the termination of his employment with Alliance, the event which triggered his right to convert.[1] The defendants, arguing that ERISA preempted section 4216(d) and that accordingly a federal question was presented, removed the action to federal court. The district court, concluding that ERISA preempted her state law claims, denied a motion by plaintiff to remand the action to state court. After finding that the defendants had complied with their ERISA obligations to inform Mr. Howard of his conversion rights under the Plan, the district court granted summary judgment in their favor. This appeal followed.

### DISCUSSION

#### A. *Preemption*

This appeal raises the frequently litigated issue of the scope of federal preemption under ERISA, the comprehensive federal statutory scheme "designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983).

While the statute does not mandate particular benefits, it governs plan operations, provides rules of fiduciary responsibility and sets forth disclosure requirements to further ERISA's policy of protecting the interests of plan participants in the benefits that employers do elect to provide. *Id.* at 90–91, 103 S.Ct. at 2896–97; 29 U.S.C. §§ 1001, 1022, 1024(b) (1982 & Supp.V 1987).

ERISA also contains a preemption provision. Section 514(a) provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a) (1982). However, this broad preemption provision is not without qualification and, pertinent to this case, excepts from preemption laws that "regulate insurance." 29 U.S.C. § 1144(b)(2)(A) (1982). The district court concluded that New York Insurance Law § 4216(d) is covered by the preemption clause and is not preserved by the savings clause as a law that regulates insurance. For the reasons set forth below, we agree.

■ ERISA applies to employee benefit plans, not employee benefits. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987). ERISA defines an employee welfare benefit plan, in pertinent part, as "any plan ... established or maintained by an employer ... for the purpose of providing ... participants or their beneficiaries, through the purchase of insurance ... benefits in the event of ... death." 29 U.S.C. § 1002(1)(A) (1982). In *Fort Halifax*, the Supreme Court held that ERISA does not preempt a state statute requiring employ-

---

1. New York Insurance Law § 4216(d) provides:

   In the event a group life insurance policy hereafter issued for delivery in this state permits a certificate holder to convert to another type of life insurance within a specified time after the happening of an event, such certificate holder shall be notified of such privilege and its duration within fifteen days before or after the happening of the event, provided that if such notice be given more than fifteen days, but less than ninety days after the happening of such event, the time allowed for the exercise of such privilege of conversion shall be extended for forty-five days after the giving

   of such notice. If such notice be not given within ninety days after the happening of the event, the time allowed for the exercise of such conversion privilege shall expire at the end of such ninety days. Written notice by the policyholder given to the certificate holder or mailed to the certificate holder at his last known address, or written notice by the insurer mailed to the certificate holder at the last address furnished to the insurer by the policyholder, shall be deemed full compliance with the provisions of this subsection for the giving of notice.

   (McKinney Supp.1989).

ers to make a one-time severance payment to employees in the event of a plant closing, where the state statute relates to an employee benefit, not an employee benefit plan. The plaintiff argues that *Fort Halifax* is sufficiently close to her case to mandate a judgment in her favor.

We believe that Mrs. Howard's reliance on *Fort Halifax* is misplaced. While the right to convert a group policy to an individual policy and the right to notice of that privilege are undeniably employee benefits, Mr. Howard obtained these rights pursuant to the Alliance Group Life and Long Term Disability Insurance Plan, an employee welfare benefit plan within the meaning of § 1002(1). Although the one-time benefit to which the notice requirement pertains bears some superficial resemblance to the lone severance payment in *Fort Halifax*, it remains an integral part of the insurance plan administered by Gleason and Alliance and thereby renders the rationale of *Fort Halifax* inapposite. Because the New York statutory notice provision affects an ERISA covered plan, we must determine whether it is preempted.

The Supreme Court has explained that "the express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern,'" *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45–46, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)), in order to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. *Fort Halifax,* 482 U.S. at 11, 107 S.Ct. at 2217. We have been instructed that where ERISA mandates preemption of state laws that "relate to an employee benefit plan," the term "relate to" is to be given "its broad common-sense meaning, such that ... a state law 'relate[s] to' a benefit plan ... if it has a connection with or reference to such a plan." *Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1553. Accordingly, we have held that ERISA "'preempt[s] all state laws that *relate* to employee benefit plans and not just state

laws which purport to regulate an area expressly covered by ERISA.'" *General Electric Co. v. New York State Department of Labor,* 891 F.2d 25, 29 (2d Cir. 1989) (quoting *Wadsworth v. Whaland,* 562 F.2d 70, 77 (1st Cir.1977), *cert. denied,* 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978)) (emphasis in *Wadsworth* ).

But courts have reasonably concluded, notwithstanding the sweeping effect intended for ERISA preemption, that not every state law that affects ERISA plans is preempted. Some state laws simply affect employee benefit plans in "too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. "What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit...." *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 146–47 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). We agree with the district court that, applying the foregoing principles to this case, New York Insurance Law § 4216(d) is preempted when applied to employers who provide group insurance with a conversion privilege as part of an ERISA benefit plan.

■ The New York statute provides that where a group insurance policy affords the certificate holder the right to convert the group policy to an individual policy upon the happening of an event, the holder must be notified of the conversion option, within the times specified prior or subsequent to the event triggering the right to convert. Notice must be given by either the insurer or the policyholder—here the employer. But ERISA also contains elaborate provisions setting forth the content and timing of notice of such plan information to be given to plan participants. 29 U.S.C. §§ 1022, 1024(b). A state law that purports to impose on an employer obligations of the same general type as those imposed by ERISA cannot be said to have only a "remote" or "tenuous" effect on the plan.

The conversion option is a benefit of the Plan, and section 4216(d) regulates the notice that must be provided to employers concerning the existence and exercise of that option. The state's notice requirement directly affects a primary administrative function of the benefit plan. It requires employers to permanently track employees and the events that trigger the conversion option and then to send timely conversion notices.

Moreover, without preemption, employers with multi-state operations would be faced with different notice obligations in different states. This is precisely the "patchwork scheme of regulation" among the several states that ERISA was designed to avoid, *Fort Halifax*, 482 U.S. at 11, 107 S.Ct. at 2217, and that is inconsistent with the "the goal of ERISA to provide uniform, national regulation of benefit plans." *Aetna Life Ins. Co. v. Borges*, 869 F.2d at 147.

The plaintiff argues that since the New York law does not conflict with any express provision of ERISA in the sense that both laws could be enforced side by side, it is not preempted. It is true that where a state statute "creates no prospect of conflict with a federal statute, there is no warrant for disabling it from attempting to address uniquely local social and economic problems." *Fort Halifax*, 482 U.S. at 19, 107 S.Ct. at 2221. But here the state statute intrudes into an area that Congress intended to be fully occupied by federal statute. Each statute sets forth a different scheme for providing notice of plan benefits and it is this difference that puts them in conflict. Accordingly, section 4216(d) is preempted to the extent it applies to Gleason and Alliance unless it is saved by the operation of ERISA's savings clause as a law that regulates insurance. 29 U.S.C. § 1144(b)(2).

■ The Supreme Court has set forth several guiding principles for determining whether a law regulates insurance within the meaning of the savings clause. First, we must consider the "common-sense view" of the term "regulates insurance" which suggests that "in order to regulate

insurance, a law must not just have an impact on the insurance industry, but must be *specifically* directed toward that industry." *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554 (emphasis added). Second, we must look to the criteria developed by the courts for determining whether practices constitute "the business of insurance" for purposes of the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq. See Pilot Life*, 481 U.S. at 48, 107 S.Ct. at 1553. Three criteria have been used for this purpose:

> "[f]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry."

*Id.* at 48–49, 107 S.Ct. at 1553–54 (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)).

Applying these tests here, we conclude that the New York notice provision does not "regulate insurance" within the meaning of the savings clause. The "common-sense view" reveals that the notice provision is not specifically directed toward the insurance industry. Rather, the notice requirement may be fulfilled either by the group insurance policyholder—here, the employer—or by the insurer. To the extent the law regulates the notice that an employer must provide to its employees concerning a conversion privilege, it is not directed toward the insurance industry at all, much less "specifically." Thus, a common-sense understanding of the phrase "regulates insurance" does not support the argument that the New York law falls within the savings clause.

Nor do the McCarran–Ferguson factors suggest otherwise. With respect to the transfer or spreading of risk, since the statutory notice relates to a conversion that enables the insured to "transfer the risk" of his death to the insurer after his termination, in the absence of which conversion the risk would be "transferred" to him, the statute can be said to have the

"effect of transferring or spreading the policyholder's risk." Although it is the option's exercise that has this effect and not the notice itself, notice of the conversion option can play an important role in the employee's decision whether to exercise the option. Thus, notice plays a role, albeit an indirect one, in determining who will bear the risk upon termination of the group policy.

While the notice provision arguably satisfies the first of the McCarran–Ferguson criteria, it fails to satisfy the remaining two. Notice by an employer of the pre-existing conversion option is not integral to the insurer-insured relationship. Except for the fact that it may lead the insured to cause an extension of that relationship, it does not dictate any of the terms of the insurance contract itself, the principal embodiment of the insurer-insured relationship. Rather, § 4216(d) imposes notification obligations on employers only where the pre-existing group insurance contract permits a certificate holder to convert from a group to an individual policy.

Finally, as noted above, the notice requirement is not "limited to entities within the insurance industry." It extends generally to all employers who are group policyholders. Accordingly, we agree with the district court that New York Insurance Law § 4216(d) to the extent that it applies to employers is not preserved by the savings clause and is therefore preempted by ERISA.

B. *Summary Judgment*

Because the New York statute upon which Mrs. Howard relies is preempted, her remedy, if any, lies under ERISA. The district court concluded that she had no remedy since the defendants had satisfied their ERISA disclosure obligations, and granted summary judgment to the defendants. We agree with the district court.

The rules governing summary judgment are familiar and need only be briefly stated. A court may grant summary judgment only where "there is no genuine issue as to any material fact ..." Fed.R.Civ.P. 56(c). The movant's burden "will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim." *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988). Although the burden is on the moving party to show that no relevant facts are in dispute, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the nonmoving party may not rely simply "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Furthermore, summary judgment cannot be avoided by immaterial factual disputes.

ERISA provides that employees must receive a summary plan description of any employee benefit plan within ninety days after joining the plan and every five years thereafter if the plan is amended or every ten years if it is not. 29 U.S.C. §§ 1022(a)(1), 1024(b)(1). The summary plan description must contain, *inter alia,* the Plan's requirements respecting eligibility for participation and benefits and circumstances which may result in disqualification, ineligibility, denial or loss of benefits. If an employer does not provide a summary plan description, or the summary is inadequate to inform an employee of his rights under the plan, ERISA empowers plan participants and beneficiaries to bring civil actions against plan fiduciaries for any damages that result from the failure to disclose. *See* 29 U.S.C. §§ 1001(b), 1132(a)(1)(B) (1982).[2]

---

**2.** An ERISA fiduciary is defined in pertinent part as "a person ... to the extent (i) he exercises any discretionary authority or discretionary control respecting management of [an ERISA] plan ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)

(1982). Mrs. Howard does not dispute that both Gleason and Alliance are fiduciaries within the meaning of the statutory definition. Gleason has discretion in determining from whom to purchase insurance and which employees are eligible for coverage. Rather, Mrs. Howard suggests that the regulations promulgated under

Mr. Howard received notice of his conversion privilege on three separate occasions. All Alliance employees, including Howard, received a summary of the Alliance Group Life and Long Term Disability Plan in November, 1984 apprising them of the conversion privilege. In September, 1985 all employees received a summary plan description which also contained a description of the method by which the group policy could be converted to an individual policy. In March, 1986, nine months before the termination of Mr. Howard's employment with Alliance, Mr. Howard again received a description of the Plan and the conversion option in a booklet entitled "Your Employment and Benefits."

■ Mrs. Howard does not dispute that her husband received these summaries or that they were adequate notice under ERISA. Indeed, the descriptions are thorough and easily understood. Rather, she contends Alliance circulated a document containing a layoff policy which indicated, contrary to the summary plan description, that life insurance benefits would cease upon termination of employment with the company. She also maintains that at the time of the sale of Alliance's tool division, her husband was misled and confused as to whether his employment had terminated, thereby triggering his conversion option. Thus, plaintiff argues, a material issue of fact remains as to whether the defendants met their disclosure obligations under ERISA.

While it is true that by its terms ERISA requires only that the summary plan description be "written in a manner calculated to be understood by the average plan participant," 29 U.S.C. § 1022(a)(1), an employee's right to a comprehensible summary of plan benefits would be hollow if employers could distribute supplementary documents or make oral representations contradictory to a previous summary description and still be said to have satisfied their ERISA disclosure obligations. *See Ed-*

*wards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 136–37 (6th Cir.1988); *Bower v. Bunker Hill Co.,* 725 F.2d 1221, 1224–25 (9th Cir.1984) (misleading summary plan description, combined with misleading management representations, preclude summary judgment in favor of employer). The layoff policy document to which Mrs. Howard points, however, does not undermine the adequacy of the summary plan descriptions because it does not contradict them.

The layoff policy states that "[l]ife insurance ceases when the employee is laid off." Similarly, the summary plan description provides that insurance coverage ends "if you cease to be an eligible employee." Although the summary goes on to describe the conversion option, this elaboration does not render the layoff policy inconsistent with the summary. Both documents correctly state that upon termination of employment, group life insurance benefits cease. The summary simply provides a more comprehensive description as it outlines the procedure by which an employee can avoid a lapse in coverage by converting to individual insurance.

Moreover, even if the circulated layoff policy had contradicted the summary plan description, there is no evidence in the record that Mr. Howard relied on it to his detriment. While plaintiff argues that Alliance's circulation of the contradictory layoff policy misled employees about their rights under the Plan and thereby rendered the summary plan description inadequate, she does not assert that her husband ever saw the layoff policy, which was distributed only to those employees who specifically requested it. The Circuits are divided on whether detrimental reliance upon a faulty ERISA plan document is a prerequisite to recovery. *Compare McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566, 1570–71 (11th Cir.1985) (reliance must be proven) and *Govoni v. Bricklayers, Ma-*

ERISA refine the definition of fiduciary in a way that excludes the defendants from its scope. However, the regulation upon which Mrs. Howard relies, 29 C.F.R. § 2510.3–21(c)(2) (1989), is inapposite as it relates to 29 U.S.C.

§ 1002(21)(A)(ii) (1982) which provides that those who render investment advice for a fee may be fiduciaries, a provision which does not apply to Gleason.

*sons & Plasterers International Union, Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir.1984) (same) *with Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 137 (6th Cir.1988) (employee need not prove detrimental reliance to recover). Because we conclude that the layoff policy and the summary plan description at issue in this case are not inconsistent and thus the layoff policy does not render the summary plan misleading, we leave to another day the question of whether reliance upon a faulty plan document is a prerequisite to ERISA recovery.

In view of our holding that the layoff policy did not render Alliance's sufficient ERISA disclosures misleading, any subjective confusion on the part of Mr. Howard as to his employment status at the time Alliance sold the tool division—and there is no evidence in the record on that score—is irrelevant. ERISA does not require employers to notify employees when they are terminated by virtue of a sale of a division. Thus, while it might explain why he did not exercise his conversion option, Mr. Howard's understanding of his employment status is not a material issue of fact precluding summary judgment in this case. Accordingly, the district court properly granted summary judgment in the defendants' favor.

We agree with plaintiff that employers could, with little burden or expense, include notices in employees' final paychecks reminding them that in order to continue their life insurance coverage, they must exercise their conversion privileges. However, ERISA does not mandate such notice. It is the task of Congress, and not this Court, to insure that ERISA's disclosure requirements effectively promote employee interests in benefit plans.

### CONCLUSION

We hold that ERISA preempts New York Insurance Law § 4216(d) as applied in this case and that Gleason and Alliance complied with their disclosure obligations under ERISA. Accordingly, we affirm the judgment of the district court.