**Janie K. SHEALY, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**C/A No. 3:97–353–17.**

United States District Court,
D. South Carolina,
Columbia Division.

June 18, 1997.

S. Jahue Moore, Kirkland, Wilson, Moore, Allen, Taylor & O'Day, P.A., West Columbia, SC, for plaintiff.

Theodore Dubose Willard, Jr., Quinn, Patterson & Willard, Columbia, SC, for defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

JOSEPH F. ANDERSON, Jr., District Judge.

Presently before the court is defendant's motion for summary judgment which is

founded on plaintiff's failure to file a timely claim for long-term disability benefits. The benefits at issue were provided under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* For the reasons discussed below, defendant's motion is granted and this action is dismissed with prejudice.

## BACKGROUND

### A. Facts as supported by the record.

While an employee of Pleasant's Hardware, plaintiff was a participant in an employee benefit plan governed by ERISA. That plan included coverage for long-term disability benefits. These particular benefits were provided under an insurance policy purchased from UNUM Life Insurance Company ("UNUM"). The plan also, apparently, included coverage for short-term disabilities under a separate policy of insurance purchased from and administered by a different insurer.

According to plaintiff's application for benefits, she became disabled due to severe headaches on January 13, 1993. This date was plaintiff's last day of work with Pleasant's. Her claim for benefits from UNUM was apparently filled out in late 1995 but was not provided to UNUM until January 22, 1996, slightly more than three years after the disability commenced. The claim was denied soon thereafter as untimely.

Plaintiff, through counsel, appealed the denial by letter dated February 15, 1996. That letter offered two excuses for plaintiff's late filing. First, counsel argued that the delay was justified because plaintiff was unaware of the existence of UNUM until just before the claim was filed. In essence, counsel indicated that he and plaintiff assumed that both the long-term and the short-term coverage were provided by the same disability insurer,

the short-term carrier, with whom they had just settled a dispute as to payment of benefits. Second, counsel argued that "the long-term benefit claim could not have been properly made until the short-term claim was resolved." Plaintiff Exhibit B. UNUM did not accept either argument, and affirmed the denial. Only the first argument is at issue in this motion.[1]

The relevant plan language, as it appears in the summary plan description ("SPD"), reads as follows:

**When must we be notified of a claim?**

You must give us written notice of claim within 30 days of the date disability starts. If that is not possible, you must notify us as soon as you can.

\* \* \* \* \* \*

**When does proof of claim have to be given?**

You must give us proof of claim no later than 90 days after the [180 day] elimination period.

If it is not possible for you to give proof within these time limits, it must be given as soon as reasonably possible. But you may not give proof later than one year after the time it is otherwise required.

Plaintiff Exhibit A (apparently selected pages from an SPD).

The insurance policy itself contains nearly identical language:

1. Notice

   a. Written notice of claim must be given to the Company within 30 days of the date disability starts, if that is possible. If that is not possible, the Company must be notified as soon as it is reasonably possible to do so.

   \* \* \* \* \* \*

2. Proof

   a. Proof of claim must be given to the Company. This must be done no later

---

1. In opposing summary judgment, plaintiff appears to rely solely on the first argument (ignorance of UNUM's existence). Plaintiff has not drawn the court's attention to any provision of any plan document or even to any oral assurance that would support the second argument (coverage under the short-term policy being a prerequisite to coverage under UNUM's policy). Certain-

ly, there are strong practical and policy reasons why two separate insurers would each require early notice of a disability claim even (or especially) if the other carrier was disputing coverage. Therefore, there is no reason to assume that such a requirement exists. For these reasons, the court will not address this argument further.

than 90 days after the end of the elimination period.

    b. If it is not possible to give proof within these time limits, it must be given as soon as reasonably possible. But proof of claim may not be given later than one year after the time proof is otherwise required.

Defendant Exhibit C (policy of insurance).

## B. Unsupported assertions.

To this point, the facts are not disputed or adequate support for plaintiff's version of them is provided in the record. Plaintiff, however, also seeks to rely on other assertions which are neither fully developed nor adequately supported. Those assertions are set out below.

According to plaintiff's attorney, plaintiff notified her employer of her disability soon after it occurred. Her employer provided a form on which to file a claim for short-term disability benefits but did not draw plaintiff's attention to the separate existence of UNUM as the long-term disability carrier.

Plaintiff filed a claim with the short-term carrier who initially denied benefits. This led plaintiff to contact counsel who then pursued and "settled" an action for short-term benefits on plaintiff's behalf. No dates are provided for when these actions occurred other than that it appears the dispute with the short term carrier ended by late 1995.

Plaintiff's counsel further argued that plaintiff was wholly unaware of the existence of UNUM as the provider of her long-term disability benefits until around the time the claim with the short-term carrier was settled, apparently late 1995. Counsel implied, but did not explicitly state, that plaintiff never received a copy of any SPD which identified UNUM as the insurer until around that time. Plaintiff, therefore, asserts that her claim for long-term benefits was filed promptly be-

cause it was filed soon after she learned of UNUM's existence.[2]

## DISCUSSION

### A. Under the facts which are supported by the record, plaintiff's claim fails as a matter of law because she has failed to provide notice as required under the policy.

    ■ Under ERISA, a court is required to enforce the terms of a plan as written. *E.g., Biggers v. Wittek Indus., Inc.,* 4 F.3d 291, 295 (4th Cir.1993) (the specified written terms of an established ERISA plan could not be modified by oral or informal amendments). If the plan language is ambiguous, however, the court can construe the language against the insurer, at least in the absence of discretionary authority being given to the plan administrator to interpret the terms of the plan. *Jenkins v. Montgomery Indus., Inc.,* 77 F.3d 740, 743–744 (4th Cir.1996) (finding contract law principles which are imported into ERISA allow the courts to construe plan documents against the drafter). Certain other state law doctrines may also be relied on to interpret plan language, at least in certain circumstances. *Id.* (explaining that a court may look to state law for aid in interpretation, at least if the plan directs that state law controls interpretation). Further, if there are conflicting plan documents, the plaintiff is protected if she relies on the more generous language. *E.g., Aiken v. Policy Management Sys. Corp.,* 13 F.3d 138, 140–41 (4th Cir.1993).

    ■ It is quite clear, however, that a court may not apply principles of estoppel to modify the terms of a plan. *E.g., HealthSouth Rehabilitation Hosp. v. American Nat'l. Red Cross,* 101 F.3d 1005, 1010 (4th Cir.1996) (finding third party provider not allowed to rely on erroneous oral assurance of coverage) *cert. denied,* —— U.S. ——, 117 S.Ct. 2432,

---

**2.** These and related assertions by plaintiff's counsel leave many questions unanswered. For instance, there is no attempt to explain why plaintiff was unaware of the differing insurers or what efforts she or counsel undertook to obtain information on the available benefits. Plaintiff's claim of ignorance is particularly troubling in light of counsel's other, albeit equally unsupport-

ed, claim that deductions were made from plaintiff's salary to pay the premiums for this coverage. Similarly, although plaintiff seems to infer from the settlement with the short-term carrier that the long-term disability claim would otherwise have been honored, she does not disclose the terms of this settlement.

138 L.Ed.2d 194 (1997); *Biggers,* 4 F.3d at 295; *Coleman v. Nationwide Life Ins. Co.* 969 F.2d 54, 58–59 (4th Cir.1992), *cert. denied,* 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993). This limitation has been applied in numerous cases, often in circumstances that appear on the surface to create harsh results. *See, e.g., Mullins v. Blue Cross and Blue Shield of Va.,* 79 F.3d 380 (4th Cir.1996) (affirming grant of summary judgment for insurer who denied coverage of plaintiff's liver transplant because plaintiff did not fall within the definition of covered persons even though plaintiff had been paying premiums for coverage for some time) *and case below,* 859 F.Supp. 206 (W.D.Va. 1994) (also noting that plaintiff had no action against the company which had improperly allowed her to pay the premiums); *Coleman,* 969 F.2d at 58–59 (recovery denied against insurer when employer failed to pay premiums for coverage even though insurer did not take affirmative action to cancel coverage until after hospitalization and even though third party cost containment company "authorized" number of days for hospitalization).

Only in the most extreme cases of misrepresentation by persons standing in a fiduciary capacity has the Fourth Circuit Court of Appeals or the United States Supreme Court indicated that relief differing from that allowed by the plan documents might be available. *E.g., Varity Corp. v. Howe,* —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (allowing equitable relief in form of reinstatement under former plan when employer intentionally and fraudulently caused employees to change plans); *Elmore v. Cone Mills Corp.,* 23 F.3d 855 (4th Cir.1994) (promissory estoppel allowed in very limited circumstances when representation induced reliance before formal documents were created). Even then, recovery is possible only if the participants would have been unable to learn the true facts for themselves through the appropriate plan documents.

■ This court discerns a certain common theme in these cases. That is, that participants must read the materials available to them. If they lack those materials, they must request them. ERISA facilitates this request by providing a monetary penalty if the materials are not provided promptly after an appropriate written request. 29 U.S.C. § 1132(c). Here, there is no showing that plaintiff at any time sought to obtain the appropriate documents.

A plain reading of the plan documents at issue requires that notice be given to UNUM within thirty days of the commencement of a disability. Under normal circumstances, a claim must also be filed within ninety days after the conclusion of the 180 day elimination period. The plan further provides that if it is impossible to file the claim earlier, it may be filed within one year after the time "otherwise required."

While not a model of clarity, most particularly as to what would constitute an impossibility, any fair reading of these provisions would put plaintiff on notice that, at best, she had one year after the ninety plus 180 day period otherwise allowed. In other words, under the best case scenario, plaintiff had approximately one year and nine months to file her claim. She waited over three years.

Since plaintiff filed her claim more than fifteen months after the maximum time that might be allowed even it was found to be "impossible" for plaintiff to file her claim earlier, and since she gave no prior notice of her claimed disability, the court need not resolve whether plaintiff's claim of ignorance would satisfy the impossibility exception to the normal filing period. Quite simply, plaintiff has failed to satisfy the notice requirements for coverage under the plan absent some legal justification. As discussed below, there is none.

Plaintiff argues that the language of the plan is ambiguous in various respects or that there are conflicts between the plan and SPD, either of which, she asserts, entitles her to a more generous reading of the allowable time limits. There are numerous problems with these arguments.

■ The claim of conflicting language can be easily resolved without even consulting the plan documents simply because plaintiff could not have been misled into a late filing by a document which she claims she did not receive until many months after the deadline for filing had passed. *Stiltner v. Beretta*

*U.S.A. Corp.*, 74 F.3d 1473, 1478–79 (4th Cir.) *cert. denied*, —— U.S. ——, 117 S.Ct. 54, 136 L.Ed.2d 18 (1996) (employee could not rely on SPD he had not seen before disability occurred).

Further, the SPD and policy are effectively identical as to the relevant provisions. There is simply no conflict between them. The rule discussed in *Aiken* (regarding conflicting plan documents) is, therefore, irrelevant.

Finally, and most significantly, the court does not find any fair reading of the notice or proof of claim language to be misleading in the relevant respects. Plaintiff would, for instance, have the court read the "we" and "us" in the plan booklet to mean the employer (as in "you must give 'us' notice"). The booklet, however, expressly states that these terms refer to UNUM. Similarly, plaintiff would rely solely on the sentence which reads, "If it is not possible for you to give proof within these time limits, it must be given as soon as reasonably possible" to support her argument for an effectively indefinite time limit. This reading, however, disregards the very next sentence: "But you may not give proof later than one year after the time it is otherwise required." Indeed, if the court were to accept plaintiff's interpretation of the plan documents, not only would ignorance satisfy the impossibility requirement, but there would effectively be no time limit whatsoever for participants who claimed ignorance, even without justification for that ignorance. The court, therefore, rejects plaintiff's suggested interpretations as untenable.

### B. Even Were Counsel's Unsupported Assertions As To The Facts Supported By The Record, Plaintiff's Claim Would Fail

■ The court must also reject plaintiff's reliance on her alleged lack of knowledge that UNUM provided the long-term coverage or that the coverage under UNUM's policy

was separate from that provided by the short-term disability carrier. As a threshold matter, this argument rests on allegations which are not supported by the record. It is well settled that a party cannot rely on bare assertions of the pleadings where the facts are controverted by affidavit or other evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257–58, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). In the present case, many of the assertions now relied on by plaintiff are not even in the pleadings, which are bare boned at best. Instead, they were made only in memoranda or oral argument by counsel.

The failure to provide adequate support for plaintiff's factual positions is not excused by counsel's claim that he received late notice of the hearing. At the outset, any failure to receive notice was due to counsel's oversight.[3] Further, counsel had no reason to delay filing support for plaintiff's position until a hearing was set.

The local rules of this district require that responses to motions be filed within fifteen days of the filing of a motion. Local Rule 7.06, DSC.[4] Absent extenuating circumstances, any supporting materials should be filed at that time. Certainly, since oral argument is not guaranteed, counsel would be ill advised to await scheduling of argument to submit support. *See* Local Rule 7.08, DSC.

■ The present motion, supported by affidavit and appropriate plan documents, was filed on April 11, 1997. Plaintiff requested and was granted a five day extension to respond. She filed her opposition on May 5, 1997. The only supporting evidence attached to plaintiff's opposition was the February 15, 1996 letter from her attorney to UNUM after the initial denial of benefits and two pages from a plan booklet (including a cover page clearly disclosing the identity of UNUM and the page setting out the time limits for filing claims for benefits). Counsel did not, at that time, indicate any intent to file addi-

---

**3.** It appears that the only reason counsel did not receive earlier notice of oral argument was his firm's failure to pick up notices placed in their pick-up box in the office of the Clerk of Court. Firms that have opted for this form of delivery are expected to check the box at least daily.

**4.** This rule implements Fed.R.Civ.P. 56(c) and (e) and Fed.R.Civ.P. 6(d) by specifying a time for filing affidavits given that oral argument is not guaranteed.

tional support. The court, therefore, finds that plaintiff has failed to provide adequate support for many of her factual positions despite more than adequate opportunity to do so.

While the court finds no excuse for this lack of support, it will, nonetheless address plaintiff's factual assertions to avoid possible prejudice to the client as a result of counsel's failure to follow the relevant rules.

Even accepting all of counsel's claims as to the facts to be true, this court cannot see any legal basis for allowing recovery based on simple lack of information. This would, in essence be an estoppel based on ignorance. However, estoppel has been soundly rejected as a basis for allowing recovery even for misinformation.[5]

Allowing recovery under an estoppel theory would be particularly inappropriate in this case for two very significant additional reasons. First, plaintiff has not demonstrated any attempt to obtain the relevant information despite the fact that she was represented by counsel. Second, plaintiff has not alleged or shown that UNUM had any duty to provide information to her, much less that UNUM was responsible for some representation or misrepresentation. At most, her employer failed to provide adequate information about the available benefits.[6]

Finally, the court feels constrained to respond to counsel's argument that denying plaintiff the opportunity to proceed against UNUM violates concepts of "fundamental fairness." In essence, counsel encouraged this court to disregard binding Fourth Circuit and Supreme Court authority "as a matter of humanity" and to avoid a "windfall" to the insurance carrier. *See* Transcript of June 4, 1997 hearing at 14.

Giving counsel the benefit of the doubt, this might be considered a request to argue against precedent. *See* Fed.R.Civ.P. 11(b)(2); South Carolina Rules of Professional Conduct, Rule 3.3(a)(3) (Appellate Court Rule 407). No legal support for plaintiff's position was, however, offered.

In any case, while there are cases decided under ERISA which may seem harsh in result, this is not one of them. Plaintiff has failed to comply with the most basic notice and filing requirements of the plan. The lateness of the claim is extreme, not minimal. There is no justification offered for the delay other than ignorance, and no explanation of why that ignorance could not have been cured by the most basic of inquiries. In any case, there is no indication that UNUM played any role whatsoever in causing plaintiff's ignorance.

WHEREFORE, this court finds that, taking all the facts and inferences in plaintiff's favor, defendant UNUM is entitled to judgment as a matter of law.

IT IS SO ORDERED.

---

**5.** The court does not here address a situation in which information is affirmatively or intentionally withheld despite request.

**6.** The court emphasizes at this juncture that the record is most incomplete in this regard. There is no affidavit whatsoever from plaintiff and certainly none that explains how she could have been paying premiums for the coverage, as counsel claims, and yet never have received any documentation of the coverage. There is, likewise, no sworn statement from plaintiff explaining what, if any, plan documents she had been provided during her employment or whether she or counsel ever requested any. Similarly, counsel fails to explain why he would not have realized the limitations of the short-term policy early in the course of his representation as to that claim (for instance, when he first examined that policy). In any case, there is no indication that any failure to provide information was the fault of UNUM.