**Mary O'CONNOR, Appellant,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Appellee.**

No. 97–5244.

United States Court of Appeals, District of Columbia Circuit.

Argued April 17, 1998.

Decided July 7, 1998.

Richard L. Davis and Tracy J. Power were on the briefs for appellant.

J. Snowden Stanley, Jr. argued the cause and filed the brief for appellee.

Before: WILLIAMS, GINSBURG, and GARLAND, Circuit Judges.

GINSBURG, Circuit Judge:

Mary O'Connor sued her former employer and its insurance company for their failure to pay long-term disability benefits under an employee benefit plan. The district court dismissed the case against the insurance company because O'Connor failed to submit timely proof of her claim, and transferred the case against the employer (and the receiver thereof) to the Central District of California. For the reasons stated below we reverse.

## I. Background

Western Federal Savings and Loan Association provided its employees with a long-term disability benefit plan insured by the UNUM Life Insurance Company of America and governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*

Under the terms of the plan an injured employee must give UNUM written notice of any claim "within 30 days of the date disability starts, if that is possible" or else "as soon as it is reasonably possible to do so." In addition, the employee must provide proof of the claim "no later than 90 days after the end of the elimination period," which ends 180 days after the onset of the disability, or else "as soon as reasonably possible," but in no event more than "one year after the time proof is otherwise required." Therefore, the latest an employee may file a timely proof of claim is 270 days plus one year after the onset of her disability.

In 1991 O'Connor was an assistant manager in a Northern California branch office of Western Federal, which had its principal place of business in Southern California. In July 1991 O'Connor became disabled, took a leave of absence, and received workers' compensation benefits. Western Federal terminated her employment effective August 7, 1992.

O'Connor contends that despite her asking repeatedly whether she was entitled to additional benefits Western Federal never told her about the long-term disability plan. Nor did O'Connor ever receive a summary plan description, as required by the ERISA.

In early 1993 O'Connor learned from a friend about the long-term disability plan. On March 18 of that year O'Connor submitted a notice of claim to Western Federal and sent the physician statement portion of the proof-of-claim form to her doctor, who forwarded the completed form to Western Federal in May. UNUM received the proof-of-claim form in mid-May, 42 or 43 days late. In July UNUM informed O'Connor of its final decision to deny her claim because she had not filed the proof of claim within the time limit set by the plan.

Meanwhile, in June 1993 the United States had placed Western Federal into receivership, and the Resolution Trust Corporation had been appointed receiver. Subsequently, the Federal Deposit Insurance Corporation succeeded the RTC as receiver.

In September 1995 O'Connor filed suit against UNUM, Western Federal, and the receiver in the United States District Court for the Northern District of California. The FDIC moved to dismiss and in September 1996 the court held that the case was in the wrong venue because a claim against the FDIC as receiver must be filed in either the district in which the depository institution had its principal place of business (in this case the Central District of California), or in the District of Columbia. *See* 12 U.S.C. § 1821(d)(6). Based upon O'Connor's preference the case was transferred from the Northern District of California to the District of Columbia.

After the transfer, however, O'Connor moved to retransfer the case back to the Northern District of California; if venue was not proper there for a case against the FDIC, then O'Connor invited the court to dismiss the FDIC as a party. In opposition UNUM argued that it was planning to move for summary judgment and that in the interest of judicial economy the court should decide its motion before deciding O'Connor's motion to retransfer. In August 1997 the district court granted UNUM's motion for summary judgment, holding that

> the terms of UNUM's disability benefits policy are clear and unambiguous, and ... pursuant to the policy's terms, plaintiff was required to file her proof of claim for long term disability benefits by no later than April 7, 1992 ... and failed to do so.

The court thereupon transferred the case against the FDIC to the Central District of California, and O'Connor appealed.

## II. Analysis

O'Connor's primary argument is that the district court erred in granting summary judgment to UNUM because UNUM failed to submit any evidence that it was prejudiced by O'Connor's failure to file timely proof of her claim. Here O'Connor relies upon the so-called "notice-prejudice" rule of California, which provides:

> [A] defense based on an insured's failure to give timely notice [of a claim] requires the insurer to prove that it suffered substantial prejudice. Prejudice is not presumed from delayed notice alone. The insurer must

show actual prejudice, not the mere possibility of prejudice.

*Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal.App.4th 715, 15 Cal.Rptr.2d 815, 845 (1993) (citations omitted); *see Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 151 Cal. Rptr. 285, 587 P.2d 1098, 1106–07 (1978) (in banc). UNUM argues not that it suffered substantial prejudice, but rather that the notice-prejudice rule is preempted by the ERISA.

 The ERISA provides broadly for the preemption of "all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title," 29 U.S.C. § 1144(a), subject to certain exceptions. An exception is to be found in the "saving" clause for "any law of any State which regulates insurance, banking, or securities." *Id.* § 1144(b)(2)(A).

The parties agree that the notice-prejudice rule "relate[s] to an[ ] employee benefit plan" covered by the ERISA, *id.* § 1144(a), and therefore falls within the general preemption provision of the ERISA. What they dispute is whether the saving clause applies.

In *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court described the test by which we are to determine whether a state law "regulates insurance" within the meaning of the saving clause: Take a "common-sense view" of the term "regulates insurance," and look to the three factors the Court has previously identified for determining whether an activity comes within the "business of insurance" as that term is used in the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015. The three factors are:

> "*[F]irst,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry."

*Pilot Life,* 481 U.S. at 48–49, 107 S.Ct. 1549 (quoting *Union Labor Life Ins. Co. v. Pire-*

*no,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)); *see Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 742–44, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

Applying these factors to a similar long-term disability benefit plan issued by UNUM the Ninth Circuit, in *Cisneros v. UNUM Life Insurance Co. of America,* 134 F.3d 939 (1998), *pet. for cert. filed,* 66 U.S.L.W. 3773 (U.S. May 20, 1998) (No. 97–1867), held that the California notice-prejudice rule comes within the saving clause of, and therefore is not preempted by, the ERISA. After first agreeing with UNUM that the employee in that case had failed to comply with the unambiguous deadline for submitting a proof of claim, *id.* at 943, the Ninth Circuit rejected UNUM's argument that the ERISA preempted the notice-prejudice rule and reversed summary judgment in favor of UNUM because the insurer had not shown substantial prejudice from the delay.

The *Cisneros* court held that the notice-prejudice rule was not preempted specifically because it is covered by the saving clause. With respect to the "common sense" part of the test laid out in *Pilot Life,* the court stated:

> [B]y requiring the insurer to prove prejudice before enforcing proof-of-claim requirements, the notice-prejudice rule dictates the terms of the relationship between the insurer and insured and so seems, as a matter of common sense, to "regulate insurance." The rule is directed specifically at the insurance industry and is applicable only to insurance contracts.

*Id.* at 945. With respect to the McCarran–Ferguson factors, the court held that the first factor did not favor saving the notice-prejudice rule because "it does not alter the allocation of risk for which the parties initially contracted, namely the risk of lost income from long-term disability." *Id.* at 946.* The second and third factors, however, "weigh[ed] heavily in favor" of saving the notice-prejudice rule, respectively because that rule "dictates the terms of the relationship between the insurer and the insured,

---

* O'Connor does not argue that the notice-prejudice rule has the effect of transferring or spreading a policyholder's risk. Therefore, while we adopt the reasoning of *Cisneros,* we have no occasion in this case to decide whether *Cisneros* was correct upon that point.

and consequently, is integral to that relationship," and because it "applies only to the insurance industry." *Id.*

The court concluded that although only two of the three McCarran–Ferguson factors favored saving the notice-prejudice rule from preemption, on balance that was enough.

> [W]e can find no sense in concluding that this particular state law does not regulate insurance when it so clearly does. If California's rule does not regulate insurance, what does it regulate? A rote application of the risk spreading factor would work unreasoned mischief against the broad purpose of the saving clause, eliminating California's notice-prejudice insurance rule from its reach.

*Id.*

UNUM's primary argument against applying the notice-prejudice rule here is that a state law "regulates insurance" within the meaning of the saving clause only if all three McCarran–Ferguson factors favor that characterization—a position that the Fifth Circuit has expressly adopted, *see, e.g., CIGNA Healthplan of La., Inc. v. Louisiana,* 82 F.3d 642, 650 (5th Cir.1996); *Tingle v. Pacific Mut. Ins. Co.,* 996 F.2d 105, 107, 110 (5th Cir.1993), and the Eleventh Circuit has implicitly followed, *see Anschultz v. Connecticut Gen. Life Ins. Co.,* 850 F.2d 1467, 1469 (11th Cir.1988) (holding that statute "fails to satisfy all of the criteria of the McCarran–Ferguson Act and, thus, falls outside the ERISA saving clause"); *cf., e.g., Brewer v. Lincoln Nat'l Life Ins. Co.,* 921 F.2d 150, 153 (8th Cir.1990) (common-law rule of contract interpretation not saved because it failed two factors); *Howard v. Gleason Corp.,* 901 F.2d 1154, 1158–59 (2d Cir.1990) (insurance notice statute not saved because it failed common sense test and two of three factors); *Kelley v. Sears, Roebuck & Co.,* 882 F.2d 453, 456 (10th Cir.1989) (unfair practices statute not saved because it failed two of three factors). In addition, UNUM relies upon *Group Life & Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979) (holding that agreements between insurer and pharmacies setting price of prescriptions is not "business of insurance" within McCarran–Ferguson Act for purpose of exemption from antitrust laws), for the proposition that the first factor—whether the rule transfers or spreads a policyholder's risk—is the most important.

■ These two related arguments are not persuasive. We think the better reading of the Supreme Court's McCarran–Ferguson Act cases is that none of the factors in the test is by itself determinative of what constitutes the business of insurance. Certainly nothing in *Royal Drug* means that any practice outside the core risk-spreading function of insurance—such as requiring notice and proof of a claim—cannot still be a part of the "business of insurance." Indeed, in the subsequent antitrust case in which the three-factor test first appears, the Court clearly stated, albeit in a *dictum,* that "[n]one of these criteria is necessarily determinative in itself." *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). Similarly, in *Metropolitan Life,* where the Court first applied the McCarran–Ferguson test in order to determine whether a state law "regulates insurance" for the purpose of the ERISA saving clause, the three factors were said to be "relevant" to the question whether a state law is a regulation of the "business of insurance." 471 U.S. at 743, 105 S.Ct. 2380. That the factors are merely "relevant" suggests that they need not all point in the same direction, else they would be "required."

Moreover, because the notice-prejudice rule so clearly passes the common sense part of the test set out in *Metropolitan Life,* we think it would be unreasonable to hold that the rule does not regulate the business of insurance because it does not transfer or spread a policyholder's risk. As the Ninth Circuit asked rhetorically in *Cisneros,* "[i]f California's rule does not regulate insurance, what does it regulate?" Furthermore, the second McCarran–Ferguson factor strongly supports the conclusion that the notice-prejudice rule regulates the business of insurance; the rule directly regulates the relationship between insurer and insured, which the Supreme Court has indicated is the "focus" of the term "business of insurance" in the McCarran–Ferguson Act. "Statutes aimed at protecting or regulating this relationship,

directly or indirectly, are laws regulating the 'business of insurance.'" *SEC v. National Securities, Inc.*, 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

UNUM argues next that two other courts of appeals have held that ERISA preempts state notice rules, here referring to *Nazay v. Miller*, 949 F.2d 1323 (3d Cir.1991), and *Howard v. Gleason Corp.*, 901 F.2d 1154 (2d Cir.1990). Although the court in *Nazay* did hold that the district court improperly imported a state prejudice rule into the notice requirement of a health insurance plan, *see* 949 F.2d at 1336–37, the opinion addresses neither the preemption nor the saving provisions of the ERISA. In *Howard* the court determined that the state rule at issue fell outside the saving clause largely because it applied both to insurers and to employers, *see* 901 F.2d at 1158–59; the notice-prejudice rule of California, however, applies only to insurers. Therefore, neither *Nazay* nor *Howard* controls this case.

Finally, UNUM relies upon six cases upholding the decisions of insurers not to provide benefits to employees who failed to file timely proof of their claims. In four of the cases UNUM cites there was no .issue of preempting a state notice-prejudice or similar rule. *See Shealy v. UNUM Life Ins. Co. of Am.*, 979 F.Supp. 395 (D.S.C.1997), *aff'd mem.*, 145 F.3d 1325, 1998 WL 231258 (4th Cir.1998); *Lehmann v. UNUM Life Ins. Co. of Am.*, 916 F.Supp. 897 (E.D.Wis.1996); *Kennedy v. System One Holdings, Inc.*, 835 F.Supp. 947 (S.D.Tex.1993); *Freeman v. UNUM Life Ins. Co.*, 1990 WL 640294 (D.Minn. Mar.27, 1990). In the other two cases the courts dismissed almost entirely without analysis the argument that state law required a showing of prejudice. *See Oas v. Royal Maccabees Life Ins. Co.*, 1995 WL 664640, at *7 (E.D.Pa. Nov.6, 1995) (citing *Nazay* and stating that there the Third Circuit "rejected the idea of an Insurance Company having to establish some sort of prejudice"), *aff'd mem.*, 92 F.3d 1172 (3d Cir.1996); *Mackey v. UNUM Life Ins. Co. of Am.*, No. C86–5265, at 5 (W.D. Wash. May 12, 1987) ("State law is inapplicable in this ERISA case"). Therefore these cases do not alter our conclusion.

## III. Conclusion

We hold that the ERISA does not preempt the notice-prejudice rule of California. Therefore, because UNUM did not provide evidence of substantial prejudice the district court erred when it granted UNUM's motion for summary judgment. Accordingly we remand this matter for the district court to determine whether, with UNUM still a defendant, the case should stay in the District of Columbia or be transferred elsewhere.

*So ordered.*