**Doug BONESTROO and Judy Bonestroo, Plaintiffs,**

v.

**CONTINENTAL LIFE AND ACCIDENT COMPANY, Defendant.**

**No. C98–4059 MWB.**

United States District Court, N.D. Iowa, Western Division.

Nov. 30, 1999.

Timothy Kramer, Rock Vally, IA, for Plaintiffs.

Cynthia A. Hurley, Denny M. Dennis, Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ....................................................1043
 A. Procedural Background .............................................1043
 B. Factual Background ...............................................1044

II. STANDARDS FOR SUMMARY JUDGMENT ............................1045

III. LEGAL ANALYSIS ..................................................1045
 A. Existence of an ERISA plan ........................................1046
 B. Are Plaintiffs' Claims Under Iowa Code Chapter 509B Preempted By
 ERISA? .........................................................1049
 1. "Reference to" ERISA in Iowa Code Chapter 509B ...................1050
 C. The "Savings Clause" ............................................1052
 1. Is ERISA's "savings clause" applicable to Iowa Code Chapter 509B?....1053
 2. ERISA's enforcement provision ..................................1054

IV. CONCLUSION ....................................................1055

## I. INTRODUCTION

### A. Procedural Background

In this case, the court is called upon to determine whether a group health insurance policy is governed by ERISA, and if so, whether ERISA's broad preemption provision usurps the plaintiffs' state law claims. In its motion for summary judgment, the defendant argues that not only is the policy governed by ERISA, but plaintiffs' state law claims, as they relate to a policy governed by ERISA, are preempted. Conversely, plaintiffs argue that in light of the Department of Labor's "safe harbor" regulation, the policy is not governed by ERISA, and, furthermore, they argue that even if the policy is governed by ERISA it escapes preemption because of the "savings clause."

On April 30, 1998, plaintiffs Doug Bonestroo and his wife, Judy Bonestroo, filed a petition against defendant Continental Life and Accident Company ("Continental") in the Iowa District Court for Sioux County. In their petition, plaintiffs allege that the defendant issued insurance policies for group health insurance covering the plaintiffs, and that the defendant terminated plaintiffs' coverage under this policy in a manner that was misleading. Plaintiffs invoke Iowa Code Chapter 509B, and allege that defendant failed to adhere to the requirements set forth specifically in § 509B.4 and § 509B.5 of this state statute. Plaintiffs seek reinstatement of their

health insurance contract, remuneration for out-of-pocket medical expenses that have been incurred since the policy was terminated, for interest on any award and for "any other relief the court may deem just and justified." On May 21, 1998, defendant filed an answer and statement of affirmative defenses. Thereafter, on June 8, 1998, defendant filed a notice of removal of this action from the Iowa District Court to the United States District Court for the Northern District of Iowa. The defendant asserts that plaintiffs' claims are pre-empted by, and within the civil enforcement provisions of, the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. On June 24, 1998, plaintiffs filed a resistance to defendant's notice of removal. The court construed this resistance as a motion to remand, and found that the motion failed to comport with N.D. Ia. LR 7.1(d) because it was not accompanied by a "brief written statement of the reason in support of the motion and a list of citations of any authorities on which counsel relies." The court permitted plaintiffs additional time in which to amend their motion, however, plaintiffs failed to do so within the designated time.

On September 13, 1999, the defendant filed a motion for summary judgment. In its motion, defendant argues that the group insurance plan at issue is governed by ERISA, and that any claim under Iowa Code Chapter 509B is preempted by ERISA. Defendant argues, in the alternative, that even if this Chapter of the Iowa Code is not preempted, its provisions provide no basis for a claim against the defendant either on a continuation coverage or a right to conversion under the policy. Defendant argues that termination of plaintiffs' coverage under the policy was due to non-payment, which complies with the plain language of the policy itself, and, therefore, was justified.

Plaintiffs resisted defendant's motion on November 12, 1999, claiming there were genuine issues of material fact in dispute as to whether ERISA governs the group insurance policy. Plaintiffs contend that the policy is not governed by ERISA, and,

therefore, is not preempted. Plaintiffs argue, in the alternative, that even if the policy is governed by ERISA, the "savings clause" of ERISA prevents the preemption of Iowa Code Chapter 509B. Plaintiffs contend that they are entitled to a conversion policy from defendant. Plaintiffs also maintain that throughout the contract, A–1 made late premiums payments to Continental, which Continental routinely accepted. Despite numerous late payments, plaintiffs emphasize that Continental kept the policy in effect. Therefore, plaintiffs argue that modification of the contract through A–1's and Continental's course of dealing estopps Continental from canceling the insurance contract due to the late payments made by A–1.

On November 22, 1999, the court held oral arguments concerning defendant Continental's motion for summary judgment. Continental was represented by Cynthia A. Hurley and Denny M. Dennis of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, Iowa. Doug and Judy Bonestroo were represented by Timothy Kramer, Rock Valley, Iowa. Before discussing the standards for Continental's motion for summary judgment, the court will first consider the factual background of these proceedings.

### B. Factual Background

The court will discuss here only the nucleus of undisputed facts pertinent to the present motion for summary judgment. In its legal analysis, the court will address, where necessary, plaintiffs' assertion that genuine issues of material fact may preclude summary judgment on their claims.

On March 1, 1993, Defendant Continental Life and Accident Company ("Continental") issued a group health insurance policy, number FS 20678, to employer A–1 Specialists ("A–1"). On or about January 1, 1994, health insurance coverage under the plan was extended to A–1 employee and plaintiff, Douglas Bonestroo and his wife, plaintiff, Judy Bonestroo, under certificate number 479–86–0562.

The history of premium payments made by A–1 to Continental for the plan indicates that several payments were made, and accepted, past the due date. For example, the premium payment that was due on March 1, 1995, was not made until April 4, 1995. The premium payment due on July 1, 1995 was made on August 7, 1995. The premium payment due on December 1, 1995 was made on January 8, 1996. And the premium payment due on March 1,1996, was made on April 11, 1996. All of these payments were accepted by Continental despite their late arrival. In May of 1996, A–1 failed to make its premium payment on the policy for the month of April. Thereafter, on April 12, 1996, Continental sent written notification to A–1 indicating the termination of its coverage due to non-payment of the April, 1999 premium. Approximately fifteen days later, a second notice concerning non-payment of that premium was sent to A–1. On May 28, 1996, a lapse notice was sent to A–1. On July 19, 1996, A–1 forwarded a check for three months of premium payments along with its request that Continental reinstate the policy. A–1's application for reinstatement of the group policy was denied by Continental on September 9, 1996.

## II. STANDARDS FOR SUMMARY JUDGMENT

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R. CIV. P. 56. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–32 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here.

Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim … is asserted … may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.… *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

## III. LEGAL ANALYSIS

Defendant argues that the group policy at issue in the case is governed by ERISA, and as such, any state law claims under Iowa Code Chapter 509B are preempted. Defendant relies on *Robinson v. Linomaz,*

58 F.3d 365, 367 (8th Cir.1995), in which the Eighth Circuit Court of Appeals stated that "an employer's purchase of an insurance policy to provide health care benefits for its employees can constitute an EWBP [employee welfare benefit plan] for ERISA purposes." *Id.* at 368 (citing *Madonia v. Blue Cross & Blue Shield,* 11 F.3d 444, 447 (4th Cir.1993)). In contrast, the plaintiffs argue that their group policy was not an ERISA policy and as such their claims under Iowa Code Chapter 509B are not preempted. Plaintiffs contend that the group policy issued by Continental is not "recognizable as an ERISA plan as defined by the Department of Labor."

### A. Existence of an ERISA plan

■ The question of whether ERISA applies to a particular plan or program requires an evaluation of the facts combined with an interpretation of the law. *Kulinski v. Medtronic Bio–Medicus, Inc.,* 21 F.3d 254, 256 (8th Cir.1994) (stating that the existence of an ERISA plan is a mixed question of fact and law). Pursuant to 29 U.S.C. § 1002 there are two types of "employee benefit plans," to wit: employee welfare benefit plans and employee pension benefit plans. This case involves only the first type of plan, an employee welfare benefit plan. The court will therefore limit its discussion to employee welfare benefit plans. ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment...." 29 U.S.C. § 1002(1).

■ " 'To qualify as a plan, fund, or program under ERISA, a reasonable person must be able to ascertain the intended benefits, a class of beneficiaries, source of financing, and procedures for receiving benefits.' " *Northwest Airlines, Inc. v.*

*Federal Ins. Co.,* 32 F.3d 349, 354 (8th Cir.1994) (quoting *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)); *accord Bannister v. Sorenson,* 103 F.3d 632, 636 (8th Cir.1996) (citing and approving *Donovan* factors); *Harris v. Arkansas Book Co.,* 794 F.2d 358, 360 (8th Cir.1986) (same). There is no requirement under ERISA that the employer play any role in the administration of the plan in order for it to be deemed an employee welfare benefit plan. *Robinson,* 58 F.3d at 368. (citing *Donovan,* 688 F.2d at 1374); *see Randol v. Mid–West Nat'l Life Ins. Co.,* 987 F.2d 1547, 1551 (11th Cir.1993) ("[A] commercially purchased insurance policy under which the procedures for receiving benefits are all dictated by the insurance carrier can constitute a plan for ERISA purposes."). Indeed, the Eighth Circuit stated that an "employer's purchase of an insurance policy to provide health care benefits for its employees can constitute an EWBP for ERISA purposes." *Robinson,* 58 F.3d at 368. (citing *Madonia v. Blue Cross & Blue Shield,* 11 F.3d 444, 447 (4th Cir.1993) (stating that "under the statutory definition of an employee welfare benefit plan, employers may easily establish ERISA plans by purchasing insurance for their employees")). Notwithstanding, in order for the policy in this case to be deemed an employee welfare benefit plan for ERISA purposes, it must be "established or maintained" by the employer. 29 U.S.C. § 1002(3).

■ In this case, the defendant submitted a Certificate of Group Insurance issued by Continental to A–1, as well as an affidavit of Shirley Geiser, Conseco's Second Vice–President of Policy Owner Services and Billing and Collection Department. Conseco is the parent corporation of Continental. The first paragraph included in this certificate states, "[w]e certify that You are insured through Your Employer under the terms of the Group Policy shown in the Benefit Summary." The group policy, at issue, outlines the employee's intended benefits, which in-

clude life, accident, mental illness, maternity, disability, and medical insurance benefits. The policy also delineates the terms and conditions relating to eligibility and coverage, and the proper protocol Continental requires when setting forth a claim. A–1 created the plan by contracting with Continental, purchasing the group policy, and paying the premiums directly to Continental. The beneficiaries under this policy were the employees of A–1 Specialists. In light of this undisputed evidence, the court finds that it would have been obvious to a reasonable person that the policy at issue is an "employee welfare benefit plan." *See Donovan*, 688 F.2d 1367 ("In determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.").

■ However, the court's inquiry as to whether this policy falls within the purview of ERISA does not stop here. The dispositive question becomes whether the plan or program is "established or maintained" by the employer. 29 U.S.C. § 1002(3); *See Robinson v. Linomaz*, 58 F.3d 365, 368 (8th Cir.1995). The Department of Labor, pursuant to 29 U.S.C. § 1135, promulgated a safe harbor regulation explaining when an employer may be involved with an employee welfare benefit plan without having "established or maintained" it. Consequently, as plaintiffs set forth and argue in their brief, the court must analyze whether this policy falls within the safe-harbor regulation established by the Department of Labor. This regulation provides in pertinent part:

> an employee welfare benefit plan shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which:
> (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, with-

out endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

29 C.F.R. § 2510.3–1(j). It is only when all four of the "safe harbor" provisions are satisfied that an employer is not considered to have "established or maintained" the program or plan, thereby escaping ERISA's preemption. *See Thompson v. American Home Assur. Co.*, 95 F.3d 429, 435 (6th Cir.1996); *Grimo v. Blue Cross & Blue Shield of Vermont*, 34 F.3d 148, 150 (2nd Cir.1994); *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988) (per curiam), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989).

Plaintiffs assert that the group policy issued to A–1 is not an ERISA plan because the four part test outlined above applies to their situation. To bolster their assertion, plaintiffs submitted Judy Bonestroo's affidavit in which she states that "A–1 Service Specialists made a payroll deduction for our share of the Continental Life group health insurance premium. A–1 Service Specialists did not pay any part of the premium as an employee benefit." Affidavit of Judy Bonestroo. Thus, in light of this evidence, plaintiffs argue that the first and fourth elements, outlined above, have been satisfied. Judy Bonestroo further states that "[w]e were not required by A–1 Service Specialists to be part of the Continental Life group insurance plan. We had the option of using another health insurance company to obtain medical coverage." *Id.* Accordingly, plaintiffs argue that the second element is likewise satisfied. Assuming *arguendo* that the plaintiffs satisfied these three elements, in order for them to successfully invoke the safe harbor provisions, all four

elements must be satisfied. Here, plaintiffs fail to offer any evidence generating a genuine issue of material fact with respect to the third element. Instead, plaintiffs categorically state, "that the plain language of the contract makes it clear that A–1 Service Specialists did little more than collect premiums." Plaintiffs' Brief at 3. The court disagrees. Upon reviewing the contract, the court opines that the "plain language of the contract makes it clear that A–1 Service Specialists" did considerably more than simply collect premiums.

As articulated in the contract, A–1's functions under the terms of Continental's insurance policy were more than advisory. *See Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1134 (1st Cir.1995) ("It is only when an employer purposes to do more, and take substantial steps in that direction, that it offends the ideal of employer neutrality and brings ERISA into the picture."). In fact, in light of the following factors, the court concludes that A–1's actions rose to the level of endorsement of Continental's insurance policy. First, A–1 chose Continental, and entered into a written contract with Continental as its group insurer. *See Brundage–Peterson v. Compcare Health Servs. Ins. Corp.,* 877 F.2d 509, 511 (7th Cir.1989) (stating, *inter alia,* that an employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation). Second, employees could not independently subscribe to Continental under this policy, because A–1 employees were insured only through A–1. Third, certain benefits were not available to employees if A–1 ceased to be insured under the contract. Fourth, when an employee ceased working for A–1, their coverage under this policy likewise ceased. Fifth, A–1 determined which employees were eligible for coverage under the policy and also dictated the benefits an employee could obtain. *See Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1083 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990)

(considering, *inter alia,* employer's role in devising eligibility requirements when determining the application of the safe harbor regulations). Sixth, A–1 was responsible for notifying employees if they were covered under the policy, as well as notifying employees of their right to continue coverage. *See Crull v. Gem Ins. Co.,* 58 F.3d 1386, 1390 (9th Cir.1995) (explaining that the employer undertook numerous administrative tasks, including, *inter alia,* notifying its employees about any changes in the plan). Seventh, A–1 was liable for all premium payments due during the grace period, which was an additional 31 days that Continental allowed for late payments. Furthermore, as stated in the contract, A–1 was designated as the "trustee of the foresight employers trust." A group plan with this level of employer involvement and lack of employee autonomy is the type of plan that ERISA was designed to govern. *See Johnson,* 63 F.3d at 1133 (describing that where the employer "offends the ideal of employer neutrality," as a result of its level of involvement, ERISA is properly invoked). Thus, A–1 did not merely advertise the group insurance; rather, it endorsed Continental's group health insurance plan within the meaning of the regulation. Accordingly, the insurance plan fails to satisfy the requirements of the safe harbor outlined in 29 C.F.R. § 2510.3–1(j)(3) and, therefore, qualifies as an employee welfare benefit plan under ERISA.

Additionally, in *Kulinski v. Medtronic Bio–Medicus, Inc.,* 21 F.3d 254 (8th Cir. 1994), the Eighth Circuit Court of Appeals stated that whether a plan qualifies as an ERISA plan requires a "pivotal inquiry:"

"The pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the em-

ployer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria."

*Kulinski,* 21 F.3d at 257. As discussed above, in this case, to be eligible for coverage under Continental's group insurance plan, A–1 employees must have actively worked at least 30 hours per week, have legally resided in the United States or Canada, and have completed the specified number of days of active work elected by A–1. Thus, A–1 determined whether an employee was eligible for coverage. Additionally, as outlined in the "benefit summary" that Continental provided A–1, benefits were made applicable to employees only if elected by A–1. Thus, as the "trustee" of the policy, A–1 assumed a significant amount of responsibility and discretionary authority concerning the plan. Accordingly, the court concludes that this policy falls outside of the safe harbor and is governed by ERISA.

### B. Are Plaintiffs' Claims Under Iowa Code Chapter 509B Preempted By ERISA?

■ The Employee Retirement Income Security Act of 1974 is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Indeed, in *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356, (1990), the Supreme Court stated that in enacting ERISA, Congress resolved to provide a uniform system for regulating employee pension and welfare programs. *FMC,* 498 U.S. at 64, 111 S.Ct. at 411. The Eighth Circuit Court of Appeals further echoed that tenet, stating that "Congress included the express preemption clause of § 1144(a) to provide for the displacement of State action in the field of private employee benefit programs." *Prudential Ins. Co. of America v. Nat'l Park Med. Ctr. Inc.,* 154 F.3d 812, 826 (8th Cir.1998) (internal quotation

marks and citations omitted). ERISA's preemption clause provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

29 U.S.C. § 1144(a). The Supreme Court has noted that the preemption clause is "conspicuous for its breadth," and "[ERISA's] deliberately expansive language was designed to establish [ ] plan regulation as exclusively a federal concern." *California Division of Labor Standards Enforcement v. Dillingham Constr.,* 519 U.S. 316, 117 S.Ct. 832, 837, 136 L.Ed.2d 791 (1997); *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). However, the undersigned, sitting by designation with the Eighth Circuit Court of Appeals in *Prudential,* observed that because "Congress did not define what it meant by state laws that 'relate to' an ERISA benefit plan anywhere in the statute," *Id.* at 819, the Supreme Court has "struggled with the inherent vagueness of that key statutory phrase." *Id.* at 815; *see also Painter v. Golden Rule Ins. Co.,* 121 F.3d 436, 438–39 (8th Cir.1997) (observing the Supreme Court's struggles with the scope of 'relate to' preemption under § 1144(a)), *cert. denied,* 523 U.S. 1074, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998). Indeed, the *Prudential* court analogized the task of determining the scope of ERISA's 'relate to' preemption to "unraveling a Gordian knot." *Id.* at 818. Therefore, notwithstanding § 1144(a)'s expansive language, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983); *United of Omaha v. Business Men's Assur. Co.,* 104 F.3d 1034, 1039

(8th Cir.1997) (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)).

■ The Supreme Court has delineated a two-part inquiry to determine whether a state law 'relates to' an employee benefit plan covered by ERISA. *See Dillingham,* 519 U.S. at 322, 117 S.Ct. at 837; *Prudential,* 154 F.3d at 819; *Wilson v. Zoellner,* 114 F.3d 713, 716 (8th Cir.1997). In applying this test, "[a] law 'relates to' a covered employee benefit plan for purposes of § [1144(a)] if it (1) has a connection with or (2) reference to such a plan." Id.

### 1. *"Reference to" ERISA in Iowa Code Chapter 509B*

■ A state law has a prohibited "reference to" an ERISA plan if the state law " 'acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the laws operation. . . .' " *Wilson,* 114 F.3d at 716 (quoting *Dillingham,* 519 U.S. at 324, 117 S.Ct. at 838). Therefore, where a state law "imposes requirements by reference to ERISA covered programs[,] . . . that reference will result in preemption." *Wilson,* 114 F.3d at 716. An overview of the Supreme Court cases that addressed the "reference to" inquiry is beneficial.

In *Mackey v. Lanier Collection Agency & Serv.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the Supreme Court stated that a Georgia garnishment statute that "singles out ERISA employee welfare benefit plans for different treatment under state garnishment procedures, is preempted under § [1144(a)]." *Mackey,* 486 U.S. at 830, 108 S.Ct. 2182, 100 L.Ed.2d 836. The Supreme Court reasoned that "[t]he state statute's express reference to ERISA plans suffices to bring it within the federal law's preemptive reach." *Id.* Thereafter, in *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Supreme Court was presented with the question whether ERISA preempted a Texas common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA law. *Ingersoll–Rand,* 498 U.S. at 135, 111 S.Ct. 478, 112 L.Ed.2d 474. The Supreme Court reiterated its holding in *Mackey,* stating that " 'we have virtually taken it for granted that state laws which are "specifically designed to affect employee benefit plans" are preempted under § [1144(a)].' " *Ingersoll–Rand,* 498 U.S. at 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (quoting *Mackey,* 486 U.S. at 829, 108 S.Ct. 2182, 100 L.Ed.2d 836). In that case, the Supreme Court also determined that the Texas common-law cause of action at issue was preempted because "there simply is no cause of action if there is no plan." *Id.*

Furthermore, in *District of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), the Supreme Court stated that a District of Columbia law that specifically referred to benefit plans that were regulated by ERISA was preempted "on that basis alone." *Greater Wash. Bd. of Trade,* 506 U.S. at 130, 113 S.Ct. 580, 121 L.Ed.2d 513. Specifically, the Supreme Court stated:

'The health insurance coverage that [the District of Columbia law] requires employers to provide for eligible employees is measured by reference to "existing health insurance coverage" provided by the employer and "shall be at the same benefit level." D.C.Code Ann. § (a–1)(1) and (3) (Supp.1992). The employee's "existing health insurance coverage," in turn, is a welfare benefit plan under ERISA § 3(a), because it involves a fund or program maintained by an employer for the purpose of providing health benefits for the employee "through the purchase of insurance or otherwise." § 3(a), 29 U.S.C. § 1002(1). Such employer-sponsored health insurance programs are subject to ERISA regulation, see § 4(a), § 3(a), 29 U.S.C. § 1003(a), and any state law imposing requirements by reference to such covered programs must yield to ERISA.'

*Prudential,* 154 F.3d at 824 (quoting *Greater Wash. Bd. of Trade,* at 130–31, 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513).

 Turning to this case, the court observes that there is no actual or express 'reference to' ERISA or an ERISA plan in either Iowa Code subsections 509B.4 or 509B.5. However, the "reference to" inquiry requires the court to consider both actual and implicit reference to ERISA or ERISA plans. *Prudential,* 154 F.3d at 825; *Wilson,* 114 F.3d at 717 (finding that the state law does not actually or implicitly refer to ERISA plans). Thus, the court must still determine whether the subsections of Iowa Code Chapter 509B make implicit reference to ERISA or ERISA plans. Upon review, the court concludes that Iowa Code Chapter 509B makes implicit reference to ERISA and ERISA plans. For example, subsection 509B.1 defines the terms used in this chapter, and specifically states that " 'group policy' means a group accident or health insurance policy issued by an insurance company under chapter 509 . . . ." Chapter 509, in pertinent part, provides:

> No policy of group life, accident or health insurance shall be delivered in this state unless it conforms to one of the following descriptions:
> 1. A policy issued to an employer, or to trustees of a fund established by an employer, which employer or trustee shall be deemed the policyholder, to insure employees of the employer for the benefit of persons other than the employer. . . .

IOWA CODE § 509.1. (1987). The language contained in this Chapter demonstrates that Iowa's state laws operate directly on ERISA plans. In *Prudential,* the Eighth Circuit Court of Appeals concluded that the Arkansas PPA (Patient Protection Act) is specifically designed to affect employee benefit plans, based in part on the language in the Act, which provides that "[i]t is a violation of this subchapter for any health care insurer or other person or entity to provide any health benefit plan providing for health care services that does not conform to this chapter." *Pru-*

*dential,* 154 F.3d at 825. In this case, the language in Iowa Code Chapter 509 provides the same type of conformity requirement, and it also refers to policies issued to employers, who in turn insure their employees for their benefit. *See Washington Physicians Serv. Ass'n v. Gregoire,* 147 F.3d 1039 (9th Cir.1998) (finding that the Washington statute at issue did not refer to ERISA or ERISA plan, because the statute made clear that the term health plans did not include a benefit plan offered by an employer, and specifically excluded employer-sponsored health carriers). The court, once again, directs the parties' attention to the Eighth Circuit case, *Prudential,* when sitting by designation, the undersigned expressed concern about the scope of ERISA preemption. *Prudential,* 154 F.3d at 831 (referring to the various courts that have expressed concern about the scope of ERISA preemption). However, the court points out that "it is for Congress, not the courts, to reassess ERISA in light of modern insurance practices and the national debate over health care." *Id.*

Accordingly, because Iowa Code Chapter 509 refers to ERISA or ERISA plans, Iowa Code subsections 509B.4 and 509B.5 likewise refer to ERISA or ERISA plans. This is so because chapter 509 defines the term "group policy," and subsections 509B.4 and 509B.5 deal with conversion of group policies, and notification requirements for group policy holders. Thus, Iowa Code Chapter 509B, subsections 4 and 5, make impermissible "reference to" ERISA or ERISA plans, and as such are preempted by 29 U.S.C. § 1144(a). *Dillingham,* 519 U.S. at 322–23, 117 S.Ct. at 837–38. The court finds it unnecessary to consider whether Iowa Code Chapter 509B, subsections 4 and 5, are also preempted under the "connection with" prong, since these subsections are preempted under the "reference to" prong. Having found that Iowa Code Chapter 509B, subsections 4 and 5, are preempted, the court must now consider whether these subsections are "saved" from ERISA pre-

emption as a state law that regulates insurance.

### C. The "Savings Clause"

The "savings clause" excepts from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).[1] The "savings clause" provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." *Prudential Ins. Co. of America v. Nat'l Park Med. Ctr. Inc.*, 154 F.3d 812, 826 (8th Cir.1998); *see also United of Omaha*, 104 F.3d at 1039 ("The savings clause excepts from preemption certain categories of state law, including state law that regulates insurance."). The Supreme Court first considered the scope of the ERISA "savings clause" in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 2380, 85 L.Ed.2d 728 (1985). The Supreme Court first tool: a "common sense" view of the question whether a state law was one "which regulates insurance" and then explained that the state law must regulate the "business of insurance," as that term is defined by cases interpreting the McCarran–Ferguson Act. *Id.* at 743, 105 S.Ct. at 2391. The Supreme Court reaffirmed its use of the *Metropolitan Life* analysis in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), however, it did so with the intent to create a narrow scope for the "savings clause." Adhering and applying the principles espoused by the Supreme Court, the Eighth Circuit Court of Appeals reiterated the scope of ERISA's "savings clause,"

> The Supreme Court has explained that a state law 'regulates insurance' if (1) it is directed specifically toward the insurance industry and (2) it applies to the "business of insurance" within the mean-

ing of the McCarran–Ferguson Act, which gives to the states the authority to regulate the business of insurance, *see* 15 U.S.C. §§ 1011–1015. *Pilot Life*, 481 U.S. at 48, 107 S.Ct. at 1553; *Metropolitan Life*, 471 U.S. at 742–43, 105 S.Ct. at 2390–91; *Baxter v. Lynn*, 886 F.2d 182, 185 (8th Cir.1989). A law applies to the business of insurance under the McCarran–Ferguson Act if it (1) has the effect of transferring or spreading the policyholder's risk; (2) is an integral part of the policy relationship between the insurer and the insured; and (3) is limited to entities within the insurance industry. *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. at 2391.

*United of Omaha*, 104 F.3d at 1039–1040; *Prudential Ins. Co. of America v. Nat'l Park Medical Center, Inc.*, 154 F.3d at 828 (citing same with approval).

Furthermore, the Eighth Circuit Court of Appeals held that state insurance provision, even if clearly falling within the scope of the insurance "savings clause," can be preempted by ERISA if the state insurance provisions provide additional remedies to an ERISA plan participant who sues for a mishandled claim. *See e.g. In Re Life Ins. Co.*, 857 F.2d 1190 (8th Cir. 1988). For this proposition, the Eighth Circuit Court of Appeals relied on *Pilot Life* in which the Supreme Court wrote broadly that the civil enforcement provisions of ERISA were exclusive. The Supreme Court wrote:

> The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.

*Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556. Therefore, even if the insurance

---

1. The "savings clause" is itself qualified by the "deemer clause," which states that neither an ERISA plan nor a trust created by such a plan "shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B).

code at issue in this case, Iowa Code Chapter 509B, is not preempted by ERISA, the court must determine whether ERISA preempts the state remedies available to plaintiffs. *See Painter v. Golden Rule Ins. Co.,* 121 F.3d 436, 439 (8th Cir.1997) (holding that if ERISA provides plaintiff remedies for the wrongful denial of Conversion policy benefits, then plaintiff's state law claims for tortious mishandling of her benefit claim are conflict preempted).

### 1. Is ERISA's "savings clause" applicable to Iowa Code Chapter 509B?

 Iowa Code Chapter 509B, "Continuation and Conversion of Group Health Insurance," consists of five sections, three of which are inapplicable in this case. Section 4, however, pertains to the conversion of group policies, and section 5 pertains to notice of termination of membership or modification of coverage. Defendant asserts that these sections of Chapter 509B are preempted by ERISA. Plaintiffs argue that if the court determines that the group health insurance plan issued by Continental is an ERISA covered plan, the "savings clause" prevents ERISA's preemption of Iowa Code Chapter 509B. Plaintiffs argue that Chapter 509B "is directly related to the regulation of insurance within the state of Iowa … and, as such, the savings clause exempts Iowa Code Chapter 509B from ERISA coverage." Plaintiffs Brief at 4.

The court concludes that both Iowa Code subsections 509B.4 and 509B.5, fall squarely under the preemption clause since both sections directly "relate to" an employee welfare benefit plan. Therefore, the court must determine whether Iowa Code Chapter 509B escapes preemption by operation of the "savings clause." The "savings clause" applies only if the state law at issue falls within the "common sense" view of the words "regulating insurance," and if the law regulates the "business of insurance."

However, the court concludes that to apply the "savings clause" analysis to Iowa Code subsection 509B.4 would allow the

plaintiffs, in this case the Bonestroos, to circumvent an explicit ERISA provision. The Ninth Circuit has stated that to apply the "savings clause" [to conversion rights] would allow the employee to end-run an explicit ERISA-provision. *See Tingey v. Pixley–Richards West, Inc.,* 953 F.2d 1124, 1133 (9th Cir.1992). Additionally, the Second Circuit and Fourth Circuit have stated that state law claims relating to conversion rights are preempted by ERISA. *See White v. Provident Life & Accident Ins. Co.,* 114 F.3d 26, 28 (4th Cir.), *cert. denied,* 522 U.S. 950, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997); *Howard v. Gleason Corp.,* 901 F.2d 1154, 1157–58 (2nd Cir.1990); *see also Demars v. Cigna Corp.,* 173 F.3d 443, 450 (1st Cir.1999) (explaining that conversion rights are subject to ERISA regulation, whereas conversion policies are not subject to ERISA preemption). It is patently obvious that Congress has devoted a considerable amount of attention to conversion rights for health benefits. *See* 29 U.S.C. §§ 1022–24, 1161–1167. For example, the *Tingey* court thoroughly addressed Congress's attention to conversion rights for health benefits, emphasizing that § 1161(a) establishes the specific right to conversion, § 1162(5) indicates the time periods within which notice of the conversion right must be given, and § 1162(2) details the maximum period, depending on the circumstances, for which the plan must maintain coverage. *Id.* Therefore, based on the attention that Congress has given to the question of conversion rights for health benefits, the court agrees that "these rights and the remedies for breaches thereof be exclusively those found in ERISA." *Tingey,* 953 F.2d at 1133 (referring to *Pilot Life,* and the exclusive nature that Congress intended ERISA-created rights to have). In this case, subsection 509B.4 establishes an insured's conversion rights upon cancellation of a health insurance policy, and, therefore, it directly encroaches upon an area that Congress intended to be governed exclusively by ERISA. *See Metropolitan Life Ins. Co.,* 471 U.S. at 739, 105 S.Ct. 2380, 85 L.Ed.2d

728 ("The pre-emption provision [of ERISA] ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements."); *see also Pennsylvania R. Co. v. Public Service Commission,* 250 U.S. 566, 569, 40 S.Ct. 36, 37, 63 L.Ed. 1142 (1919) ("The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."). As a result, the court concludes that Iowa Code subsection 509B.4 is preempted by ERISA without analyzing this subsection under the "savings clause."

■ However, unlike section 4 of Iowa Code Chapter 509B, which speaks to conversion rights, the court must determine whether section 5 falls within the "savings clause," and escapes preemption. Under the "common sense" approach, the court concludes that notice of termination of membership or modification of coverage is not directed specifically toward the insurance industry. *See C. Howard v. Gleason Corp.,* 901 F.2d 1154, 1158–59 (2nd Cir. 1990) (holding that the notice provision does not "regulate insurance" within the "common sense" view, nor does it constitute the "business of insurance" for purposes of the McCarran–Ferguson Act). Also, under the McCarran–Ferguson three prong test, the court concludes that this subsection does not regulate the "business of insurance." *See Metropolitan Life,* 471 U.S. at 743, 105 S.Ct. at 2391 ("A law applies to the business of insurance under the McCarran–Ferguson Act if it (1) has the effect of transferring or spreading the policyholder's risk; (2) is an integral part of the policy relationship between the insurer and the insured; and (3) is limited to entities within the insurance industry."). Under the first prong of the McCarran–Ferguson Act test, the state law at issue cannot have the effect of transferring or spreading the policyholder's risk. The Supreme Court has explained that the risk-spreading principle concerns the nature of the coverage of the policy—in other words, the risks of injury that the insurance company will bear for the insured. *Union*

*Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 130, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982). That transfer is complete at the time the contract is entered. *Id.* Subsection 5 merely outlines the notice requirements that an employer or policyholder is expected to adhere, and does not transfer or spread the policy holder's risk. Under the second prong, the notice requirement in subsection 5 is not an integral part of the policy relationship between A–1 and Continental; rather, it is an administrative duty that A–1 owes the plaintiffs, who in this case are the beneficiaries. Under the third prong, this subsection is not limited to entities within the insurance industry as it pertains to all employers who are group policy holders. Because most employers are not in the insurance business, the notice provision cannot be properly characterized as "limited to entities within the insurance industry." *Id.* Therefore, the court concludes that Iowa Code subsection 509B.5 is not "saved" from ERISA's preemptive effect. *See Willett v. Blue Cross & Blue Shield of Ala.,* 953 F.2d 1335, 1341 n. 6 (11th Cir. 1992) (explaining that a state law that requires an insurer to inform insureds that their coverage has lapsed when an employer fails to pay a premium does not regulate the "business of insurance," and, therefore, is not "saved" from preemption).

**2. *ERISA's enforcement provision***

■ Furthermore, even if Iowa Code Chapter 509B is not preempted, the court must still determine whether ERISA preempts the remedies available to plaintiffs' state law claims. Under Title 29 U.S.C. § 1132, a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. As mentioned above, the language in *Pilot Life* indicates that ERISA's enforcement provisions completely preempt state law remedies when claims involve ERISA plan beneficiaries. *See Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556. Indeed, the Eighth Circuit Court of Ap-

peals interpreted *Pilot Life* as standing for the proposition that "the civil enforcement provisions of § 1132(a) are the exclusive remedy for beneficiaries seeking to enforce their rights under an ERISA plan." *See Donatelli v. Home Ins. Co.*, 992 F.2d 763, 764–65 (8th Cir.1993); *see also Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 570 (11th Cir.1994) ("The *Pilot Life* opinion indicates a strong preference for preemption of state statutes that concern subjects among the central purposes of ERISA, and indicates that application of the business of insurance test should be informed by the purposes underlying ERISA."); *Wiggins v. Guardian Life Ins. Co. of America*, 820 F.Supp. 419, 421 (N.D.Iowa) (postulating that chapters 506, 509, and 514A would be preempted by ERISA and its civil enforcement provision, because the plaintiff is an ERISA plan participant suing an ERISA insurer for a mishandled claim).

The intent of ERISA's preemption provision was to avoid a "patchwork" of state employee benefit plan regulations and attendant administrative complexity and inefficiency by ensuring that administration of employee benefit plans would be governed by a single, uniform set of federal regulation. *Fort Halifax Packing v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In the present case, plaintiffs base their claim on Iowa Code subsections 509B.4 and 509B.5, and allege that the defendant terminated their coverage under their group insurance policy in a manner that was misleading. As discussed previously, the plan qualifies as an ERISA employee welfare benefit plan, and, accordingly, the court must conclude that the broad language of *Pilot Life* dictates that any relief available to a beneficiary of such a plan must be based on an ERISA claim. Such a remedy is exclusively within ERISA's ambit. *See In Re Life Ins. Co. of North America*, 857 F.2d 1190, 1194 (8th Cir.1988) (stating that "the policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan

participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA"). Therefore, plaintiffs remedy, if any, lies under ERISA.

## IV. CONCLUSION

The court concludes that plaintiffs' state law claims are preempted by ERISA. However, the court will not prematurely dispose of a case at the summary judgment stage before providing plaintiffs the opportunity to set forth cognizable claims under ERISA. Therefore, plaintiffs have forty-five (45) days in which to set forth claims under the express provisions of ERISA. If plaintiffs fail to set forth such claims under ERISA, the court will grant defendant's motion for summary judgment.

**IT IS SO ORDERED.**