**Bryan H. IMME, Plaintiff,**

v.

**FEDERAL EXPRESS CORP., Defendant.**

**No. Civ. 301CV00705AWT.**

United States District Court, D. Connecticut.

April 2, 2002.

Mark D. Soycher, Rebecca M. Vicente, Law Office of Mark D. Soycher, Bloomfield, CT, for Plaintiff.

James M. Sconzo, Halloran & Sage, Hartford, CT, Wade A. Forsman, Michele L. Fowler, Carl K. Morrison, Federal Express Corp., Legal Dept.-Litigation, Memphis, TN, for Defendant.

## *RULING ON MOTION FOR SUMMARY JUDGMENT*

THOMPSON, District Judge.

Plaintiff Bryan H. Imme ("Imme") brought this action claiming that the de-

fendant, Federal Express Corporation ("FedEx"), violated Section 31–51x of the Connecticut General Statutes by terminating his employment after he refused to take a drug test when directed to do so. The defendant has moved for summary judgment, contending that it had reasonable suspicion that Imme was under the influence of drugs, which could adversely affect his job performance. For the reasons set forth below, the defendant's motion is being granted.

## I. BACKGROUND

The plaintiff was hired by FedEx in February 1979 as an aircraft loader at Bradley International Airport and later became a courier for FedEx. In 1990, Imme transferred to the FedEx location in Hatfield, Massachusetts. In 1996, Imme pled guilty to charges of driving under the influence, and he was removed from his courier position, which required driving. In March 1997, Imme returned to FedEx's Bradley location as a ramp handler, and in October 1997, he was promoted to team leader.

As a team leader at the ramp, Imme was responsible for coordinating the efforts of other handlers and ensuring that the loading and unloading moved quickly. Handlers are responsible for loading packages into, and taking them out of, containers using a three-belt system which can move up to 3,000 packages per hour. In addition, handlers scan packages that come onto the belts and transport packages by driving forklift-type vehicles.

During his employment with FedEx, Imme was provided with information regarding FedEx's drug and alcohol policies, as well as FedEx's general workplace conduct policies. Imme did not read the "Drug–Free Workplace Policy" provided to him, but he was aware of where it could be found and had access to it. Imme's immediate supervisor, Laura Finan ("Fi-

nan"), was also familiar with FedEx's drug and alcohol policies, including the policy setting forth the circumstances under which an employee could be required to submit to a drug or alcohol test. In addition to being familiar with these policies, Finan received training, about once a year, on how to administer these policies. She would watch a video on the policies and procedures, what to look for and what to do.

On March 6, 2000, Imme received a warning letter from Finan as a result of complaints that he had behaved unprofessionally towards some of his co-workers. This warning noted that Imme had six "documented conduct related deficiencies" in his personnel record since August 1998, and it warned Imme that he could face disciplinary action, including termination of his employment, if he had any further behavioral problems at work. In March 2000, Imme was arrested a second time for driving under the influence; Imme pled guilty to the charges.

On April 28, 2000, the plaintiff started his shift at approximately 6:30 or 7:00 p.m. Around 8:00 to 8:30 p.m., Finan observed Imme acting strangely. Finan saw Imme engage in a verbal altercation with one of the employees under his supervision. She also noticed that Imme was chewing rapidly on a large plastic tie used for securing document bags. Although it was not unusual for employees to hold such ties in their mouths, Finan had never seen anyone, including Imme, chew a tie the way Imme was chewing that one. Also, Finan observed Imme, during down time between sorts, walking back and forth for no apparent reason among the belts used for sorting packages. She noticed that Imme walked among the belts checking the things he was supposed to check, but that he "bounced back and forth" in a manner that she found suspicious under the cir-

cumstances. Finan Dep. at 82. Finally, Finan overheard Imme speaking in what she perceived to be an incoherent manner about apparently non-work related issues over the radios carried by FedEx employees, and answering his own questions over the radio in a way that Finan believed was not normal for Imme. Finan considered Imme's behavior to be unusual, even though she knew he was often loud, energetic and aggressive, because he was more so than usual. After watching the plaintiff for some time, she felt that he was not being himself. Based upon these observations, Finan concluded that Imme was under the influence of drugs, and that his conduct could pose a safety risk to other workers.

Finan called Rob McKiernan ("McKiernan"), another FedEx manager, and asked him to come to the sorting area to observe Imme. While McKiernan was on his way to meet Finan, he passed Dave Moylan, another FedEx employee who sometimes worked with Imme; McKiernan asked Moylan what was "going on" with Imme. In response, Moylan said, "I don't know, but I don't know why nobody has done a drug test on him." McKiernan Dep. at 17. McKiernan arrived at or about 9:15 p.m. McKiernan noticed that Imme was louder and more rambunctious than usual. McKiernan observed Imme yelling at people in a manner that seemed out of the ordinary under the circumstances. Earlier in the evening, around 7:00 p.m., McKiernan had noticed that Imme was making a lot of noise as he talked to other workers, and this struck McKiernan as odd because the package sort had not started at that time, and the people Imme was talking to were standing right next to him. McKiernan concluded that Imme's conduct was "definitely out of the ordinary" and that there was a "good possibility" that he was on drugs. McKiernan Dep. at 26. When McKiernan went to Finan's office, he informed her of his conclusions.

Finan and McKiernan consulted the FedEx employee manual regarding FedEx's drug testing policies. Finan also called Senior Manager Bill Roche, who advised her to contact Brent Cramer ("Cramer") in the FedEx corporate security office. Finan contacted Cramer, as well as a specialist in the FedEx "Alcohol and Drug Free Workplace" department, and an attorney in the FedEx legal department. After obtaining approval from these departments, Finan asked Imme to meet with her, McKiernan and Cramer. At that meeting, Finan informed Imme that she believed him to be under the influence of drugs. Finan told Imme of the observations she had made that led her to believe that he was under the influence of drugs, and directed Imme to take a drug test. Imme refused, and he claimed that Finan was harassing him. Finan then issued Imme a suspension letter and called a taxi to drive him home.

FedEx's policy provides that when an employee refuses to submit to a drug test, that employee is normally fired. Imme's employment with FedEx was terminated on May 2, 2000 for violation of FedEx's Alcohol and Drug–Free Workplace Policy 2–10.

## II. *LEGAL STANDARD*

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c)·(2000). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judg-

ment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson:* "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of

which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims of defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trs. of Columbia Univ.,* 131 F.3d 305, 315 (2d Cir.1997) (quoting *W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine it a genuine issue of material

fact exists. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock,* 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock,* 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the non-moving party. *See Anderson,* 477 U.S. at 248, 251, 106 S.Ct. 2505.

### III. *DISCUSSION*

Section 31–51x of the Connecticut General Statutes reads, in relevant part, as follows:

> No employer may require an employee to submit to a urinalysis drug test unless the employer has reasonable suspicion that the employee is under the influence of drugs or alcohol which adversely affects or could adversely affect such employee's job performance.

Conn.Gen.Stat. § 31–51x(a) (West Supp. 2002). The key inquiry, then is whether the agents of FedEx who made the decision to require Imme to submit to a drug test had "reasonable suspicion" that Imme was, at that time, under the influence of drugs or alcohol which adversely affected, or could have adversely affected, his job performance. The question is not whether Imme actually was under the influence of drugs or alcohol on the night of April 28,

2000, but only whether Finan and/or McKiernan had reasonable suspicion that he was.

■ In enacting § 31–51x, "the Connecticut legislature intended to adopt the Fourth Amendment standard of individualized suspicion in order to protect the privacy interests of employees." *Doyon v. Home Depot U.S.A., Inc.,* 850 F.Supp. 125, 128 (D.Conn.1994). The primary areas in which the standard of "reasonable suspicion" is applied under the Fourth Amendment are (1) in cases similar to this one, where the government seeks to impose a urinalysis test or strip search upon, or otherwise invade the privacy of, a government employee or other person, and (2) where a law enforcement officer makes an investigative stop.

■ "While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification...." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). *See also Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.")

■ The Supreme Court has described reasonable suspicion in the context of an investigative stop "simply as a particularized and objective basis for suspecting the person stopped of criminal activity...." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)

(internal quotation marks and citations omitted). Likewise, in the context of prison officials requiring a strip search of a visitor, reasonable suspicion has been defined as "something stronger than a mere hunch, but something weaker than probable cause", which requires prison officials to "point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience." *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir.1997).

> The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.

*Ornelas*, 517 U.S. at 696, 116 S.Ct. 1657.

Recently, the Supreme Court emphasized the importance, in the context of an investigatory stop, of evaluating reasonable suspicion in light of the totality of the circumstances:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.... Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.

*United States v. Arvizu*, 534 U.S. 266, ——–——, 122 S.Ct. 744, 750–51, 151 L.Ed.2d 740 (2002) (internal quotation marks and citations omitted). The Court in *Arvizu* overturned a Ninth Circuit ruling, holding that the lower court's "evaluation and rejection of [certain] factors in isolation from each other [did] not take into account the totality of the circumstances, as our cases have understood that phrase." *Id.* at 751. The Court stated that the Ninth Circuit:

> appeared to believe that each observation by [the detaining officer] that was by itself readily susceptible to an innocent explanation was entitled to no weight. *Terry[ v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ], however, precludes this sort of divide-and-conquer analysis. The officer in Terry observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was perhaps innocent in itself, we held that, taken together, they warranted further investigation.

*Id.* at 751 (internal quotation marks and citations omitted).

█ Thus, the question here is not whether each of the behaviors observed by Finan and McKiernan on the night in question, taken separately, could have created a reasonable suspicion that Imme was under the influence of drugs. Rather, the question is whether all of these observations, taken together, and viewed in the context of Finan and McKiernan's own experiences and knowledge as managers and their experiences with Imme, was sufficient to create such a reasonable suspicion. This totality of the circumstances was clearly the basis of the determination by FedEx that Imme appeared to be under the influence of drugs. *See* Finan Dep. at 46 ("It was just a compilation of different things that went on."); Finan Dep. at 83 ("Each specific instance would not make me suspect. But the compilation of the actions of Bryan that evening is what made me suspect that something was going on or suspected.").

The plaintiff does not dispute the fact that Finan and/or McKiernan personally observed his behavior for a period of sufficient duration for purposes of reaching her or his conclusion, and that she or he was concerned that he might be on drugs and might pose a safety risk to other workers. Finan observed the following behavior by Imme: (1) he engaged in a verbal altercation with another employee; (2) he made unusual and apparently incoherent comments over the radio; (3) he appeared to be walking back and forth quickly without any particular purpose; (4) he was chewing vigorously on a large plastic tie used for securing document bags, which was unusual behavior; and (5) he was unusually loud, energetic, and aggressive, even for him. In addition, McKiernan observed Imme being louder and more rambunctious than usual, yelling at people, and generally behaving out of the ordinary. Finan and McKiernan discussed their observations with each other at length. The consideration of Imme's conduct by Finan and McKiernan was highly particularized. They not only considered specific acts by Imme, but also evaluated those acts in light of Imme's normal conduct, as opposed to what they might have expected of an average employee. *See* McKiernan Dep. at 32 (in deciding whether to order the drug test, Finan and McKiernan "took into effect what his normal behavior was and what his behavior was at the present time. So we thought it was a different behavior and concluded." [sic] ).[1]

Imme does not deny engaging in the specific behaviors cited by Finan and McKiernan. Instead, he offers explanations for each of the individual behaviors observed by Finan and McKiernan. It is true that, taken separately, and considering the explanations offered by Imme, no *one* of these behaviors would be sufficient to create a reasonable suspicion on the part of FedEx that Imme was under the influence of drugs. However, taken together, and in light of Finan's experience as a manager and her experience with Imme's past behavior, the "totality of the circumstances" supports a reasonable suspicion on the part of FedEx that Imme was using drugs, as well as a conclusion that Imme's being under the influence of drugs was adversely affecting, or could adversely affect, his job performance.

It is well-established that "mere speculation and conjecture" are insufficient to defeat a motion for summary judgment. *Stern*, 131 F.3d at 315. The defendant has met its initial burden under Rule 56 by producing undisputed evidence of Imme's behavior on the night in question. Thus, it is the plaintiff's burden here to produce more than a mere "scintilla of evidence" in support of his contentions; he must produce evidence which would allow a jury to "reasonably find" for him at trial. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Imme has failed to produce evidence which creates a genuine issue of material fact as to whether, under the totality of the circumstances, FedEx had a reasonable suspicion that he was under the influence of drugs on the night in question.

The plaintiff disputes only four paragraphs of the defendant's Local Rule 9(c)(1) statement, as follows:

38. Finan also observed Plaintiff walking back and forth without any discernible purpose among the belts during a down time between sorts.

39. Finally, Plaintiff spoke incoherently over the radio by making statements that did not pertain to typi-

---

1. The court notes that although FedEx was aware of Imme's convictions for driving under the influence, there is no indication that Imme's prior history of substance abuse was a factor relied on by FedEx in determining that Imme appeared to be under the influence of drugs.

cal operating issues and answering himself in a way that Finan believed was not normal for Plaintiff.

45. McKiernan noticed that Plaintiff was louder and more rambunctious than usual and saw him yelling at employees but not directing them in performing their jobs.

46. McKiernan also observed that Plaintiff's pupils were dilated, and from knowing the effects of cocaine on a person, he believed Plaintiff to have been under the influence of cocaine.

Def.'s 9(c) Stmt. ¶¶ 38, 39, 45, 46 (citations omitted). The plaintiff responds to paragraphs 39 and 45 simply by stating "Denied." In response to paragraph 38, the plaintiff asserts that "[p]art of plaintiff's job consisted of moving between the belts between sorts to ensure that no packages or letters had fallen off the belts and been overlooked by the handlers." Pl.'s 9(c) Stmt. ¶ 38. However, he does not actually claim that he was performing that task, *i.e.* searching for packages that might have fallen off the belts, when observed by Finan. In response to paragraph 46, the plaintiff simply denies that he "showed symptoms of, or was under the influence of, any drug or alcohol at the time. As to McKiernan's knowledge or claimed observations, plaintiff has no knowledge, and thus leaves defendant to its proof." Pl.'s 9(c) Stmt. ¶ 46. However, the plaintiff has the burden at this stage to "come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis,* 7 F.3d at 1072.

█ The plaintiff offers no evidence that Finan and/or McKiernan had any unlawful or malicious motive to target him for testing or to terminate his employment. Imme does offer evidence, however, that people other than Finan and McKiernan who interacted with him on the night in question did not feel that his behavior was out of the ordinary. The plaintiff contends that his co-workers "had the greatest opportunity to observe [his] behavior" on the night in question, and that they "did not corroborate any alleged aberrant behavior by plaintiff that evening which would support any claimed suspicion of drug use by plaintiff." Pl.'s 9(c)(2) Stmt. ¶ 27. In support of this contention, the plaintiff attached two letters from co-workers of his who apparently were present on the night in question.[2] The first letter, dated May 18, 2000, is signed by Carol Desovich. It states: "I don't feel that any of [Imme's] actions were abnormal for him that night. He alway[s] worked hard and kept a good spirit to keep the rest of the team moving." Pl.'s 9(c)(2) Stmt.Ex. C at 1–2. The second letter, which is undated, is signed by Donald White. It states: "In the night in question of [Imme's] suspension [Imme] acted no different [than] any other night.... I know his style is unorthodox but he always gave his work *120%.*" Pl.'s 9(c)(2) Stmt.Ex. D at 1.

The fact that these co-workers may have believed that there was nothing out of the ordinary about Imme's behavior on the night in question does not create a genuine issue as to whether Finan and Imme observed the conduct on the part of Imme they state they observed. Since there is no question but that Finan and McKiernan did observe that conduct, the only question remaining to be determined is whether

---

2. The court notes that neither of these letters is sworn, and no affidavits or sworn testimony from any of Imme's co-workers have been presented. The court assumes for purposes of this motion that the plaintiff could produce sworn affidavits from these two individuals.

The court also notes that neither statement provides details about what opportunity the writer had to observe Imme on the night in question, or whether the writer observed all of the same actions by Imme that Finan and McKiernan observed.

Finan and/or McKiernan had reasonable suspicion, based on the totality of the circumstances, that Imme was under the influence of drugs. In looking at this question, it is immaterial whether every person who observed Imme during all or some portion of that night would have come to the conclusion arrived at by Finan and McKiernan.

Therefore, the court concludes that Imme has failed to produce any evidence creating a genuine issue of material fact in support of his claim that the defendant violated his right under Section 31–51x of the Connecticut General Statutes to not be required by his employer to undergo a drug test unless his employer had a reasonable suspicion that he was under the influence of drugs or alcohol.

### IV. *CONCLUSION*

For the reasons stated above, Defendant's Motion for Summary Judgment [Doc. # 35] is hereby GRANTED. Judgment shall enter in favor of the defendant.

The Clerk shall close this case.

It is so ordered.