**Dorcas WHITE, Plaintiff,**

**v.**

**State of CONNECTICUT DEPART-MENT OF CHILDREN AND FAMILIES, Defendant.**

**Civ No. 3:06CV00774 (AWT).**

United States District Court, D. Connecticut.

March 31, 2008.

Josephine S. Miller, Danbury, CT, Max F. Brunswick, New Haven, CT, for Plaintiff.

Antoria D. Howard, Margaret Q. Chapple, Attorney General's Office, Hartford, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

Dorcas White ("White") brings this action against the State of Connecticut Department of Children and Families ("DCF"), setting forth claims for racial discrimination in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60 *et seq.* ("CFE-PA") and for retaliation against her for exercising her rights under the Connecticut Workers' Compensation Act, Conn. Gen.Stat. § 31–275 *et seq.* The defendant has moved for summary judgment on all claims. For the reasons set forth below, its motion is being granted.

## I. FACTUAL BACKGROUND

DCF is an administrative state agency. White is an African American female. White began employment with DCF as a Social Worker on June 13, 2003. White's duties included, but were not limited to, making contact with families, visiting children in foster care, and transporting children. Transporting a child sometimes involved carrying the child in the Social Worker's arms.

On July 9, 2003, White injured her back while transporting a child. The injury was reported to her supervisor the next day. White continued to work until September 18, 2003, when she saw her doctor for back pain. The doctor provided a note restricting White to duties that did not involve lifting more than ten pounds. After White presented the note to DCF's personnel office, she was told she would be placed on medical leave until her doctor completed additional documentation. Between September and December 2003, White failed to provide DCF with documentation necessary to evaluate whether she should be put on light duty assignment.

When an employee requests light duty assignment due to a work related temporary disability or an illness preventing the fulfillment of her duties, DCF's practice is to place that employee on medical leave until the necessary medical documentation is received and/or approval for light duty is given. DCF's light duty policy provides that light duty assignment can last for up to 90 days, and the employee has to be capable of resuming full duties by the end of the 90 day period.

In 2003, when White requested light duty assignment after her initial injury, DCF provided her with a list of essential functions of the job of a Social Worker. One of the essential functions was stated to be physical transportation of children. White recognizes that physical transportation of children was one of her duties as a Social Worker. Because light duty assignment was considered for employees who sustained work related injuries and White was not yet approved for workers' compensation benefits, DCF could not grant her request for light duty assignment because of personal injury unless it was approved by the Director of Human Resources.

A notice of intent to contest White's right to workers' compensation benefits was sent on or around November 7, 2003 because White had failed to present medical documentation needed to determine whether her injury was work related. White did not formally initiate the process to obtain workers' compensation benefits until November 13, 2003, and her request for benefits was granted at an emergency hearing on December 4, 2003. During the pendency of White's request for workers' compensation benefits, White was not put on light duty assignment, but she did receive accommodations on account of her injuries. After White was approved for workers' compensation benefits, DCF put her on light duty assignment, although White did not consider anything but clerical work to be light duty.

On December 11, 2003, White's doctor completed the outstanding documents and certified that White could return to work without restriction, and she did so. White continued to work at DCF, with no light duty assignment, until April 28, 2004, when she injured her back a second time while transporting a child. White was out of work for three weeks and received workers' compensation benefits during that time. DCF asked White to complete medical forms so she could be re-evaluated for light duty. White was not allowed to return to work until the forms were completed. On June 16, 2004, White's doctor certified that White could return to work with the restriction that she not lift anything

heavier than ten pounds. On the same day, White was notified she was approved for light duty assignment and she would have another social worker accompany her for lifting purposes.

White continued to work, on light duty assignment, until November 2004, when she went on leave to have back surgery. White was out of work until July 2005. During this period, she received workers' compensation benefits. Upon White's return to work on July 6, 2005, she provided DCF with a doctor's note certifying that she could return to work with restrictions on lifting, climbing, and kneeling. As a result of those restrictions, White was again given light duty assignment for the period from July 6, 2005 to October 3, 2005.

On October 3, 2005, White went on leave to have surgery on her right hand. She was out of work for approximately six weeks and received workers' compensation benefits during this time. White returned to work sometime in November 2005 to another light duty assignment, which was to have lasted from November 24, 2005 to February 21, 2006. On January 9, 2006, White's doctor certified that White had reached maximum medical improvement and the restrictions on what she could do were permanent. Because these restrictions were permanent, DCF notified White that she could not continue to work as a Social Worker.

After White was given notice that she could not continue as a Social Worker, she provided documentation requesting that DCF perform a "less arduous duty search," which is a search for an alternate position within DCF or another state agency that White would qualify for and be medically able to perform in.

DCF suggested that White contact the payroll unit regarding medical benefits, which White did. It also suggested that White contact a representative to inquire about disability retirement, which White did not do. On March 1, 2006, DCF notified White that because her medical condition had reached maximum improvement, her absence from work would not be covered by workers' compensation, and again DCF suggested that White inquire about disability retirement. DCF informed White that she would be terminated as an employee in good standing if the "less arduous search" was unsuccessful. White continued to receive workers' compensation benefits after her employment was terminated.

The plaintiff has submitted the affidavit of Linda Carson, a white female who was employed by DCF as a Social Worker from February 1993 to August 1999 and from June 2000 to October 2002. Carson avers that DCF provided non-black Social Workers reasonable accommodations to enable them to perform their jobs. Carson avers further that DCF has along history of providing long-term light duty assignment, or reassignment of employees to particular units, when they have medical restrictions so the employees will be able to perform their jobs; she specifically identified the Probate Unit and the Foster and Adoptive Support Unit. Carson avers that Jean Morse, Felix Ortiz, Judy Grossner, Mary Ann Townley, and Margaret Munigle–Kunsch had all been assigned to work in positions that did not require them to perform all the functions of a Social Worker, including transporting and lifting children. Carson never worked in the human resources department or the workers' compensation unit at DCF. AnnMarie Ritter, a DCF Human Resources Specialist, avers that she reviewed the files of these employees and determined that none of them was ever given a permanent light duty position. Ritter avers that DCF's records show that Morse never requested

light duty assignment and never received any such assignment; that there is no record of any injuries being suffered by Ortiz; that there is no record of Grossner working at DCF; that Townley was placed on light duty assignment after she was injured for 89 days before returning to full duty; and that there is no record of Munigle–Kunsch ever being put on light duty assignment. In addition, Jeannette Perez, the Assistant Agency Personnel Administrator for DCF, submitted an affidavit in which she avers that there is no permanent light duty assignment in any unit of DCF, including the Probate Unit and the Foster and Adoptive Support Unit, and that all Social Workers in those units must be able to perform all of the essential functions of a Social Worker.

During her deposition, the plaintiff was asked about names of several individuals she had stated were employees DCF had put on long-term light duty assignment, but the plaintiff did not have sufficient personal knowledge with respect to any of those individuals to support a conclusion that a person similarly situated to the plaintiff was treated differently. Also, at least one of the individuals was an African–American female.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson*: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are

irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d. Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock*, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock*, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. *See Anderson*, 477 U.S. at 248, 251, 106 S.Ct. 2505.

### III. DISCUSSION

#### A. *Title VII and CFEPA*

██ To survive summary judgment in a Title VII case, "[t]he plaintiff must first establish a *prima facie* case by demonstrating that: (1) she is a member of a protected class; (2)her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. *See McDonnell Douglas [Corp. v. Green ]*, 411 U.S. [792] at 802, 93 S.Ct. 1817 [36 L.Ed.2d 668 (1973) ]." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir.2006). "The burden of proof that must be met to permit a Title VII plaintiff to survive a summary judgment motion at the *prima facie* stage has been characterized as 'minimal' and '*de minimis.*' " *Jute v. Hamilton Sundstrand*

*Corp.,* 420 F.3d 166, 173 (2d Cir.2005) (citations omitted). "If the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant employer to provide a legitimate, non-discriminatory reason for the action." *Demoret,* 451 F.3d at 151. "If the defendant makes such a showing, the burden shifts back to the plaintiff to prove discrimination, for example, by showing that the employer's proffered reason is pretextual." *Id.* at 151. This shifting burden approach also applies to claims under CFEPA. *Sorrentino v. All Seasons Services, Inc.,* 245 Conn. 756, 767, 717 A.2d 150 (1998).

■ The plaintiff claims she has been subjected to racial discrimination in violation of Title VII and CFEPA. She contends that during the time she was employed by the defendant, she was denied light duty assignment while the defendant routinely granted temporary and permanent light duty assignment to her white coworkers. The defendant concedes that the first and third elements of the plaintiff's *prima facie* case under Title VII have been established here.

■ To establish the second element, the plaintiff must show she was qualified for the position of Social Worker. The plaintiff emphasizes that she holds various professional degrees and had worked as a social worker for five years prior to working for the defendant. She contends that regardless of her physical limitations she was qualified for the job. Although the plaintiff has shown, based on her educational and work experience, that she was qualified for the position prior to her doctor's certification in January 2006 that she had reached maximum medical improvement and the restrictions on what she could do were permanent, the plaintiff has failed to create a genuine issue as to whether she was qualified for the position of Social Worker after the doctor's certifi-

cation. The plaintiff does not dispute that one of the duties as a Social Worker was to transport children to visit their parents, which sometimes involved lifting children who weighed more than ten pounds. The plaintiff attempts unsuccessfully to create an issue as to whether the DCF consistently enforced a policy that a Social Worker could not stay on light duty assignment for longer than 90 days. Linda Carson avers that DCF had a history of providing permanent or extended accommodations for certain employees when it chose to do so. The plaintiff's assertions and Linda Carson's opinion are not supported by admissible evidence, while DCF has produced admissible evidence that no employee similarly situated to the plaintiff was treated differently.

■ To establish the fourth element, the plaintiff must show that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. On this element also, the plaintiff contends that DCF had a history of providing permanent or extended accommodations for certain employees when it chose to do so. As discussed above, the plaintiff has failed to create a genuine issue as to whether similarly situated white workers were treated differently. *See, e.g., Edwards v. Metro–North Commuter R.R. Co.,* 463 F.Supp.2d 279, 283–85 (D.Conn.2006) (noting plaintiff failed to establish fourth element for prima facie case because he lacked sufficient evidence that he was treated differently from similarly situated non-African American employees). Because White has failed to meet even her *de minimis* burden for establishing a *prima facie* case, the defendant is entitled to summary judgment on the plaintiff's Title VII and CFEPA claims.

### B. *Workers' Compensation Act*

At this stage of the case, the plaintiff's Worker's Compensation Act claim is that

the defendant retaliated against her by discharging her for filing for and receiving workers' compensation benefits. (*See* Pl.'s Mem. Opp. (Doc. No. 42) at 17). The plaintiff contends that the defendant's sole basis for terminating her employment was its statement that the plaintiff could no longer fulfill the essential functions of a Social Worker, and that this explanation was pretextual. The plaintiff argues that there is a genuine issue of material fact as to whether the ability to transport (including lifting) small children was in fact an essential function of a Social Worker.

Connecticut courts apply the burden-shifting analysis of *McDonnell Douglas* to state-law workers' compensation discrimination claims. *See Ford v. Blue Cross & Blue Shield of Connecticut, Inc.,* 216 Conn. 40, 53, 578 A.2d 1054 (1990). At the third step, to establish a prima facie case, the plaintiff must present some evidence from which a trier of fact could infer that the defendant discharged her because she had exercised her rights under the Workers' Compensation Act. *Id.* at 53–54, 578 A.2d 1054. In the absence of evidence of an improper motive, the plaintiff's case fails. *Id.* The Workers' Compensation Act does not require "an employer to retain an employee unable to perform his or her work simply because that inability resulted from a work related injury or illness." *Erisoty v. Merrow Mach. Co.,* 34 Conn. App. 708, 713, 643 A.2d 898 (1994).

The plaintiff has failed to create a genuine issue as to whether the ability to transport (including lifting) small children was an essential function of a Social Worker. DCF provided the plaintiff with a list of essential functions of the job of a Social Worker in 2003; physical transportation of children was listed as one of those essential functions, and White concedes that it was one of her duties as a Social Worker. Carson also states that lifting and trans-

porting children are among the "full functions" of a Social Worker. The letter from the plaintiff's doctor establishes that White was unable to perform this function. Therefore, the plaintiff has failed to create a genuine issue of material fact as to whether the defendant's explanation of why she could no longer perform as a Social Worker was pretextual, and the defendant is entitled summary judgment on the plaintiff's claim under the Workers' Compensation Act.

## IV. CONCLUSION

For the reasons set forth above, defendant Department of Children and Families' Motion for Summary Judgment (Doc. No. 36) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.